Electronically Filed
Supreme Court
SCWC-13-0005863
09-MAY-2016
09:04 AM

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

MAX C.K. BOWMAN,
Petitioner/Defendant-Appellant.

SCWC-13-0005863

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-13-0005863; CASE NO. 3DTC-13-067572)

MAY 9, 2016

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY NAKAYAMA, J.

## I.  Introduction

Petitioner/Defendant-Appellant Max C.K. Bowman (Bowman) applied for a writ of certiorari from the Intermediate Court of Appeals' (ICA) March 25, 2015 judgment on appeal entered pursuant to its February 27, 2015 opinion (opinion).  The ICA affirmed the District Court of the Third Circuit's (district court)

November 7, 2013 judgment of conviction.

Bowman is a farmer who was transporting cabbages following a harvest in the back of his uncovered truck. When he was on the highway, some of the produce spilled out onto the road. A police officer cited Bowman under Hawaiʻi Revised Statutes (HRS) § 291C-131, which prohibits spilling loads on highways.

During his bench trial, Bowman testified that he fell under an exemption for vehicles carrying agricultural produce, which is contained in subsection (c) of HRS § 291C-131. Although the exemption requires that the owner of the vehicle provide for the reasonable removal of all produce spilled on the highway, Bowman testified that he felt that it would not have been reasonable in this case to risk life and limb in order to retrieve a few leaves of cabbage in the middle of the highway. The State did not present any evidence rebutting this testimony. At the end of the trial, the district court found Bowman guilty and issued him a fine, stating that if Bowman had picked up the cabbage he would have been acquitted.

The ICA affirmed the district court's holding. On appeal before this court, Bowman argues that the ICA gravely erred in holding that he was required to present evidence on every element of the defense before he met his burden of production. Bowman also argues that the ICA erred in upholding

the district court's ruling that the prosecution met its burden of proof.

We conclude that the ICA did not err in holding that evidence needed to be adduced as to every element of the defense in order for Bowman to meet his burden of production. However, because we conclude that "reasonable removal" under HRS § 291C-131(c) requires removal of spilled agricultural produce only when the removal is reasonable, we hold that Bowman met his burden of production. Further, there is no evidence that the prosecution met its burden of proof in negating the elements of Bowman's defense. Thus, the ICA erred in affirming the district court's holding that there was sufficient evidence to support Bowman's conviction. Therefore, the ICA's judgment on appeal and the district court's judgment of conviction are reversed.

## II.  BACKGROUND

### A.  Proceedings Before the District Court

On November 7, 2013, Bowman was orally arraigned in court as follows:

> On or about the 28th day of August, 2013, in Hamakua, state and county of Hawaiʻi, Max Bowman was the operator of a motor vehicle being moved on a highway, which vehicle was not so constructed, covered, or loaded as to prevent any of its load from dropping, sifting, leaking, blowing, spilling, or otherwise escaping therefrom, thereby a violation of Section 291C-101(a) (sic), Hawaiʻi Revised Statutes as Amended.

HRS § 291C-131 (2007 Repl.) states in full:

> (a) No vehicle shall be moved on any highway, unless the

3

vehicle is so constructed, covered, or loaded as to prevent any of its load other than clear water or feathers from live birds from dropping, sifting, leaking, blowing, spilling, or otherwise escaping therefrom, except that sand may be dropped for the purpose of securing traction, or water or other substance may be sprinkled on a highway in cleaning or maintaining the highway.

(b) No vehicle shall be driven or moved on any highway when any load thereon is not entirely within the body of the vehicle; provided that this prohibition shall not apply if the load is securely fastened by means of clamps, ropes, straps, cargo nets, or other suitable mechanical device to prevent such load from dropping onto the highway or from shifting in any manner and, further, no vehicle shall be operated on any highway with any load thereon projecting beyond the extreme width of the vehicle.

(c) Vehicles carrying agricultural produce from fields during harvesting shall be exempt from the requirements of this section but the owner of the vehicle must provide for the reasonable removal of all such produce spilled or dropped on the highway.

(d) No vehicle shall be driven or moved on any highway with any load if the load is not entirely covered by a cargo net, tarpaulin, canopy, or other material designed to cover the load to prevent the load from escaping from the vehicle, where the load consists partially or entirely of loose paper, loose rubbish, plastics, empty cartons, dirt, sand, or gravel.

(e) Vehicles transporting a granular load consisting of dirt, sand, or gravel on any highway shall not be required to cover their granular load if the granular load does not extend, at its peak, above any point on a horizontal plane equal in height to the top of the side, front, or rear part of the cargo container area that is the least in height.

(f) No vehicle shall be driven or moved on any highway with a load consisting of rocks, stones, or boulders if the load, at its peak, extends above any point on a horizontal plane equal in height to the top of the side, front, or rear part of the cargo container area that is the least in height.

(g) Violation of this section shall be considered an offense as defined in section 701-107(5), shall not be subject to the provisions of chapter 291D, and shall subject the owner or driver of the vehicle, or both, to the following penalties without possibility of probation or suspension of sentence:

> (1) For a first violation, by a fine of not less than $250 and not more than $500.

> (2) For a second violation involving a vehicle or driver previously cited under this section within one

4

year:

> (A) Suspension of the vehicle registration or suspension of the license of the driver, or both, for not less than five working days but not more than ten working days; and

> (B) A fine of not less than $500 and not more than $750.

> (3) For a third or subsequent violation involving a vehicle or driver previously cited under this section within one year:

> (A) Suspension of the vehicle registration or suspension of the license of the driver, or both, for a period of thirty calendar days; and

> (B) A fine of not less than $750 and not more than $1,000.

In imposing a fine under this subsection, the court, in its discretion, may apportion payment of the fine between the driver of the vehicle and the owner of the vehicle according to the court's determination of the degree of fault for the violation.

For the purposes of this subsection, a truck-trailer combination and tractor-semitrailer combination, as they are defined in section 286-2, shall be considered as one vehicle.

During the bench trial,[1] Officer Romeo Fuiava (Officer Fuiava) testified that on August 28, 2013 at around 2:00 p.m., he was driving on Route 19 toward Hilo. Officer Fuiava observed a green flatbed pickup truck driving past him with a load of open containers filled with either cabbage or lettuce. Officer Fuiava later determined that Bowman was the person operating the truck. Officer Fuiava passed Bowman, and about a half a mile to a mile up the road, Officer Fuiava began seeing cabbage or lettuce on and to the side of the road. Officer Fuiava testified that he

---

[1]    The Honorable Melvin H. Fujino presided.

had passed this same location about a half hour to forty-five minutes earlier and there had not been any cabbage. Officer Fuiava did not see any other vehicles with lettuce or cabbage. Officer Fuiava then turned around and caught up to Bowman in Paʻauilo at Earl's store. Officer Fuiava stopped Bowman and wrote him a citation. The State did not call any other witnesses.

> Bowman then took the stand and testified as follows:

> Well, with, you know, respect to our prosecuting attorney, I just feel like I've been mischarged. It was referred under Section 291C-131(a), which is where he got the no vehicle shall be moved on any highway unless the vehicle is so constructed, dropping, sifting. Anyway, the provision I feel is more applicable is 131(c): "Vehicles carrying agricultural produce from fields during harvesting shall be exempt from the requirements of this section, but the owner of the vehicle must provide for the reasonable removal of all such produce spilled or dropped on the highway."

> . . .

> I'm a farmer. I was carrying agricultural produce from my field during harvesting, at which point some of it did spill on the highway. As far as the reasonable removal section goes, it couldn't have been much. It was trimmings. I actually drove past that section of the road later in the day, did not see any of it. I can only imagine the wind blew it off the road to decompose in a matter of days on the side, or it had been run over sufficiently and evaporated on the road. It could not have been more than one pound or two pounds of cabbage, maybe 20 leaves. And if reasonable removal is any indication, I feel risk of life and limb, running onto the road, grabbing three or four leaves of cabbage as opposed to letting it decompose naturally does not sound reasonable to me.

On cross-examination, Bowman testified that it was about 5:45 or 6:00 p.m. when he returned to look into the removal of the cabbage.

> At the end of the hearing, the following was stated:

6

> THE COURT: . . . The Court will find in this case that under Section 291C-131(c), that there's no doubt in this Court's mind that the items that are alleged to have been blown from the truck was – the officer testified that it was lettuce, but it's actually cabbage.  Section 291C-131(c) applies to you're exempt as far as the requirement from storing these items as stated by covering your load basically, if you have any type of canvas or anything like that.  That's what the exemption is.
>
> Now, in this case the next step that the Court would ask is whether or not you reasonably removed all of these products that were spilled or dropped on the highway, and in this case the Court will find that you didn't.  You just left it on the road.  So had you gone and picked it up, you would have been acquitted of this charge.  You understand?
>
> MR. BOWMAN: All right.
>
> THE COURT: That's what the law is.  You're pretty much except [sic] from having to cover this load, but if it falls, you're going to have to go and pick it up.
>
> MR. BOWMAN: Sure.  Again if in the Court's opinion reasonable removal entails running onto the highway to pick up 20 leaves of cabbage, then absolutely.

The district court found that the State proved its case beyond a reasonable doubt and entered judgment in favor of the State. Bowman received a $250 fine plus a $7 driver education fee.

## B.   Proceedings Before the ICA

In his opening brief before the ICA, Bowman argued that the oral charge was insufficient because it charged him under HRS § 231C-131(a) and did not include the elements of subsection (c) that he was convicted of.  Bowman asserted that because he put forth evidence that he was exempt under HRS § 231C-131(c), the burden was shifted to the prosecution to prove beyond a reasonable doubt that his effort to remove spilled produce was not reasonable.  Bowman also argued that the prosecution had

7

failed to prove beyond a reasonable doubt all the elements of HRS § 231C-131(c) because there was no evidence that Bowman was the owner of the truck, the prosecution did not dispute Bowman's assertion that running into the highway to remove the cabbage rather than leaving it to decompose was not reasonable, and the prosecution did not show that leaving the cabbage to disintegrate on the highway was not reasonable removal. And because there was no evidence that Bowman owned the vehicle, he questioned whether he could be convicted for a criminal offense for the failure of some other person to act.

In its answering brief, the State argued that it did not need to charge Bowman with HRS § 291C-131(c) because it is a defense and not a separate offense. The State then argued that because subsection (c) is a non-affirmative defense, the initial burden to raise the defense was on the defendant. And, although the State was then required to prove beyond a reasonable doubt facts negativing the defense, it did not have to introduce further evidence or call additional witnesses to do so. The State asserted that Bowman never claimed that he was the owner or took steps to remove the cabbage from the road. The State argued that it disproved Bowman's defense under HRS § 291C-131(c) by demonstrating that he did not make any effort to remove the cabbage from the road.

In his reply brief, Bowman argued that interpreting subsection (c) as a defense would mean that a driver could be convicted for the failure of a third party (the owner) to provide reasonable removal.  Bowman argued that it was more logical to interpret the statute as a violation against the owner of the vehicle for his/her failure to remove the produce.  Bowman also re-asserted that risking life and limb to retrieve the cabbage leaves was unreasonable, and that the State did not dispute this.

On February 27, 2015, the ICA issued an opinion affirming the district court's judgment.  The ICA began its analysis by considering whether HRS § 291C-131(c) constitutes an offense or a defense.  It first noted that under the plain language of the statute, HRS § 291C-131(a) represents a general requirement that all vehicles be constructed or covered to prevent spilling and subsection (c) is an exception to these requirements for vehicles transporting produce after harvest. The ICA then examined the legislative history of HRS § 291C-131 and noted that its purpose was to prevent the spilling of loads from vehicles on highways and that the agricultural exception was included in the original statute because the legislature believed that the application of HRS § 291C-131 would cause great hardship to the agricultural industry.

The ICA further noted that although the legislature

9

later enacted subsection (g) in 1986, which states that a violation of HRS § 291C-131 is an offense that subjects the owner, driver of the vehicle, or both to graduated penalties, there was nothing to support the conclusion that the legislature intended subsection (c) to be an offense. The ICA stated that it would lead to an absurd result if it were to interpret subsection (c) as an offense because some of the factual elements of the subsection, such as whether the vehicle was carrying produce during harvest, are within the knowledge and control of the defendant, and the State would not have the information necessary to properly charge the defendant. The ICA also noted that under this court's case law, subsection (c) is a defense rather than an offense because it is an exception that appears somewhere other than in the enacting clause of the criminal statute. Therefore, the ICA held that "subsection (c) constitutes a defense for which Bowman carried the initial burden of production."

Because the ICA concluded that subsection (c) is a defense, it held that the State was not required to include its elements in the oral charge. The ICA then held that "there was sufficient evidence to support the district court's finding that Bowman did not reasonably remove the spilled produce and, therefore, did not avail himself of the subsection (c) defense to his subsection (a) charge." In response to Bowman's contention

10

that the State failed to present any evidence that Bowman was the
owner of the vehicle or that it was reasonable for Bowman to
remove the cabbage, the ICA stated the following:

> Because subsection (c) constitutes a defense, Bowman carried
> the burden of production to produce evidence in support of
> his subsection (c) defense. Thus, any failure to present
> evidence as to one of the elements of subsection (c) is
> fatal to Bowman's defense and not the State's case-in-chief.
> There was sufficient evidence to support Bowman's
> conviction. The district court did not make a ruling as to
> whether Bowman satisfied the "owner" requirement of
> subsection (c), as defined under HRS § 291C-1 (2007 Repl.).
> Instead, the district court determined that Bowman's
> subsection (c) defense failed because Bowman failed to
> reasonably remove the spilled produce.
> During his trial, Bowman testified that when he
> returned to the location where he spilled his cabbage
> trimmings three to four hours after receiving his citation,
> he "did not see any of [the trimmings]" on the road and felt
> that "risk of life and limb, running onto the road, grabbing
> three or four leaves of cabbage as opposed to letting it
> decompose naturally [did] not sound reasonable . . . ." In
> response, the district court found that Bowman did not act
> reasonably when he "just left [the trimmings] on the road."
> The district court reasoned that "had [Bowman] gone and
> picked it up, [he] would have been acquitted of this
> charge."

In a footnote, the ICA noted that because it "affirm[ed] the
district court's determination that Bowman did not provide for
the reasonable removal of the spilled produce, [it] need not
determine whether Bowman produced evidence as to the "owner" of
the vehicle so to overcome his burden of production."

### III.  STANDARDS OF REVIEW

### A.  Statutory Interpretation

> The interpretation of a statute is a question of law
> that we review *de novo*. Similarly, a trial court's
> conclusions of law are reviewable *de novo* under the
> right/wrong standard. Under the *de novo* standard, [the
> appellate] court must examine the facts and answer the
> pertinent question of law without being required to give any
> weight or deference to the trial court's answer to the

11

question.  In other words, we are free to review a trial court's conclusion of law for its correctness.

State v. Kelekolio, 94 Hawaiʻi 354, 356, 14 P.3d 364, 366 (App. 2000) (citations omitted).

This court has repeatedly stated that, when interpreting a statute, an appellate court's

> foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And where the language of the statute is plain and unambiguous, [a court's] only duty is to give effect to [the statute's] plain and obvious meaning.

State v. Wells, 78 Hawaiʻi 373, 376, 894 P.2d 70, 73 (1995) (internal quotation marks, citations, and brackets in original omitted).  Accordingly,

> we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists[.]
>
> In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent.  One avenue is the use of legislative history as an interpretive tool.
>
> [The appellate] court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning.  Laws *in pari materia*, or upon the same subject matter, shall be construed with reference to each other.  What is clear in one statute may be called upon in aid to explain what is doubtful in another.

State v. Young, 107 Hawaiʻi 36, 39-40, 109 P.3d 677, 680-81 (2005) (internal quotation marks, citations, brackets, and

12

ellipses in original omitted; formatting altered) (quoting <u>State v. Kaua</u>, 102 Hawaiʻi 1, 8, 72 P.3d 473, 480 (2003)).

## B.    Sufficiency of the Evidence

> The standard of review for sufficiency of the evidence is well established; namely, whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, the evidence is sufficient to support a prima facie case so that a reasonable mind might fairly conclude guilt beyond a reasonable doubt.  Sufficient evidence to support a prima facie case requires substantial evidence as to every material element of the offense charged.  Substantial evidence as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. Under such a review, we give full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact.

<u>State v. Grace</u>, 107 Hawaiʻi 133, 139, 111 P.3d 28, 34 (App. 2005) (formatting altered) (quoting <u>State v. Ferrer</u>, 95 Hawaiʻi 409, 422, 23 P.3d 744, 757 (App. 2001)).

## IV.    DISCUSSION

There are two issues before this court.  The first is whether the ICA erred when it concluded that evidence needed to be presented as to every element of the defense in order for Bowman to carry his burden of production.  The second is whether the ICA erred when it upheld the district court's ruling that the prosecution met its burden of proof in negating the elements of Bowman's defense.

13

**A.** **The ICA did not err in holding that evidence needed to be adduced as to every element of the defense in order for Bowman to carry his burden of production.**

In his application for writ of certiorari, Bowman argues that because HRS § 291C-131(c) is a non-affirmative defense, pursuant to State v. Stocker, 90 Hawaiʻi 85, 976 P.2d 399 (1999), he only needed to put forth some evidence, no matter how weak or inconclusive, in order to meet his burden of production. Bowman argues that the ICA gravely erred when it stated that a failure "to present evidence as to one of the elements in subsection (c) is fatal to Bowman's defense and not the State's case-in-chief" because this court "has never required the defendant to provide evidence for each and every element of a defense as part of its burden of production."

In its response brief, the State argues that the ICA did not gravely err because it did not heighten the defendant's burden of production but simply pointed out that "if a defense has certain elements, Defendant has the initial burden to produce that evidence - no matter how weak, inconclusive, or unsatisfactory - that places a defense in issue." The State also notes that in Stocker, this court addressed the parental discipline defense and identified the specific elements of the defense that a defendant needed to produce. The State argues that "[t]hus, this Court has essentially ruled that a defendant

14

bears the initial burden to produce *some* evidence of each element of a defense before the burden shifts to the prosecution to disprove a defense beyond a reasonable doubt."

Bowman's argument that this court "has <u>never</u> required the defendant to provide evidence for each and every element of a defense" is unsupported. Although the defendant is not required to provide evidence for each and every element of a defense, the record must contain some evidence thereof. For example, in <u>Stocker</u>, the defendant was charged with harassment for slapping his son and claimed that his actions were justified by the parental discipline defense under HRS § 703-309(1) (1993), which states in relevant part:

> **Use of force by persons with special responsibility for care, discipline, or safety of others.** The use of force upon or toward the person of another is justifiable under the following circumstances:
>
> > (1) The actor is the parent or guardian or other person similarly responsible for the general care and supervision of a minor, or a person acting at the request of the parent, guardian, or other responsible person, and:
> >
> > > (a) The force is employed with due regard for the age and size of the minor and is reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor's misconduct[.]

This court then stated that the parental discipline defense was

> available to Stocker so long as *some* evidence was adduced, no matter how weak, inconclusive, or unsatisfactory it might be . . . which was probative of the facts that (1) Stocker had parental authority over [the child], . . . (2) the force at issue was employed with due regard for the age and size

15

> of the minor, . . . and (3) the force was reasonably
> proportional to the misconduct being punished and reasonably
> believed necessary to protect the welfare of the
> recipient[.]

90 Hawaiʻi at 95, 976 P.2d at 409 (internal quotation marks and citations omitted) (emphasis in original).  Therefore, this court required that there be some kind of evidence adduced as to every element of the defense before the State was required to disprove the defense beyond a reasonable doubt.  See also State v. Crouser, 81 Hawaiʻi 5, 10, 911 P.2d 725, 730 (1996) ("Crouser was charged with abuse of a family or household member, in violation of HRS § 709-906. . . . To invoke the defense of justification under HRS § 703-309, Crouser was required to make a showing that the record contained evidence supporting the following elements . . .") (emphasis added).

Thus, while Bowman was only required to make a showing that the record contained some evidence, no matter how weak or inconclusive, evidence needed to be adduced as to every element of the defense.  The ICA did not err or deviate from the burden of production standard when it held that the failure to present evidence as to one of the elements of the defense would be fatal to Bowman's case.

**B.  The ICA erred when it affirmed the district court's holding that the prosecution met its burden of proof.**

Although Bowman was required to make a showing that the

16

record contained some evidence as to every element of the defense under HRS § 291C-131(c), the question still remains as to whether the ICA gravely erred by upholding the district court's ruling that the prosecution met its burden of proof. Bowman argues that the district court failed to shift the burden onto the prosecution to disprove that his conduct was reasonable once he met the burden of production.

The defense under subsection (c) can be broken down into four basic parts: 1) vehicle carrying agricultural produce, 2) from fields, 3) during harvesting, and 4) owner of the vehicle must provide for the reasonable removal of all such produce spilled or dropped on the highway. As stated above, Bowman simply needed to put forth some evidence as to every element of the defense to meet the burden of production. Bowman specifically testified that: 1) he was a farmer, and his truck was carrying cabbages; 2) he was coming from his field; and 3) he had just harvested his cabbages. As for the fourth element, even though there was no direct evidence from either witness as to whether Bowman was the owner of the vehicle, Bowman was the driver of the truck, he was carrying his own cabbages, and he raised this particular defense. Therefore, there seems to be some circumstantial evidence that Bowman was the owner of the

17

vehicle.[2]

The difficult issue is whether Bowman provided for the reasonable removal of the cabbages spilled on the highway. Based on the transcript of the bench trial, it is difficult to determine whether the district court found that Bowman met his burden of production as to this element. After Officer Fuiava and Bowman testified, the court stated:

> Section 291C-131(c) applies to you're exempt as far as the requirement from storing these items as stated by covering your load basically, if you have any type of canvas or anything like that. That's what the exemption is.
>
> Now, in this case the next step that the Court would ask is whether or not you reasonably removed all of these products that were spilled or dropped on the highway, and in this case the Court will find that you didn't. You just left it on the road. So had you gone and picked it up, you would have been acquitted of this charge.
>
> . . .
>
> That's what the law is. You're pretty much except [sic] from having to cover this load, but if it falls, you're going to have to go and pick it up.

It is unclear whether the district court made these statements in finding:  1) that Bowman had not met the burden of production on this element because the statute required that he make some kind

_____

[2]    Additionally, despite the wording of subsection (c), it appears that the driver of a vehicle could benefit from this defense based on the penalty provision in the statute that includes "driver."  See HRS § 291C-131(g) (providing that "[v]iolation of this section shall be considered an offense . . . and shall subject the owner or driver of the vehicle, or both, to the following penalties") (emphasis added).  Because both the owner and/or the driver of the vehicle can be subject to penalties for violating this statute, it follows that a driver of the vehicle could also qualify for the defense.  It is undisputed that Bowman was driving the vehicle.  Thus, Bowman qualifies for this defense without having to adduce evidence that he was the owner of the vehicle.

of removal and he did not and, therefore, the defense did not apply, or 2) that Bowman met the burden of production but the State disproved it beyond a reasonable doubt because, in this case, it would have been reasonable for Bowman to remove the cabbage. We address both of these possibilities in turn.

### 1. Bowman met his burden of production on this element because we understand HRS § 291C-131(c) to require removal only when reasonable.

First, the district court appears to have interpreted HRS § 291C-131(c) to require that some kind of removal of spilled produce be performed in every case before the defense could be raised. This is evidenced by the court's comment that if Bowman had "gone and picked [the trimmings] up, [he] would have been acquitted of this charge." However, there seems to be at least two understandings of "reasonable removal of all such produce spilled or dropped." The first, adopted by the district court and the ICA, is that there must be removal of some kind, but it need only be to an extent that is reasonable. The second, as proposed by Bowman, is that the phrase means that removal is only necessary when it is reasonable.

We believe that the district court's interpretation of "reasonable removal" is too narrow, and are persuaded by Bowman's argument that it was unreasonable for Bowman to risk "life and limb" on a busy highway in order to pick up cabbage trimmings,

19

especially if the trimmings posed no threat to the safety of other motorists and would naturally decompose on their own.  This interpretation of the statutory language is supported by its legislative history.

As the ICA notes, the purpose of HRS § 291C-131 was to "prevent the spilling of loads from vehicles on highways" because "vehicles with uncovered cargo are . . . posing potential traffic hazards and damage to other vehicles."  H. Stand. Comm. Rep. No. 346-76, in 1976 House Journal, at 1431.  Thus, the main stimulus behind this legislation appears to be the "potential traffic hazards" posed by uncovered loads.

Subsection (c) of this statute provides an exemption to the general requirement for vehicles transporting cargo, allowing vehicles carrying agricultural produce from fields to travel uncovered as long as there is a reasonable removal of spilled produce from the highway.  This subsection was enacted so as not to "cause great hardship to the agricultural industry" and specifically "the Hawaiʻi sugar industry."  S. Stand. Comm. Rep. No. 308, in 1977 Senate Journal, at 986-87.  One logical conclusion that can be drawn from this commentary is that subsection (c) was added so that the sugar industry could transport uncovered sugar cane stalks from the fields after harvest as long as the industry provided "reasonable removal" of

20

the stalks that fell off the trucks in order to prevent "potential traffic hazards and damage to other vehicles."

Here, Bowman's cabbage trimmings are arguably not potential traffic hazards, especially when compared with the sugar cane stalks originally contemplated under this statute. And while it would be reasonable to remove sugar cane stalks from a highway in order to prevent an accident or vehicle damage, it might not be reasonable to remove cabbage trimmings, especially if the attempted removal is on a busy highway and is itself risky for both the person attempting the removal and the motorists driving on the highway.

For these reasons, we hold that "reasonable removal" means that removal of spilled produce is only necessary when reasonable. Such factors as the type and amount of agricultural produce spilled, the danger of the spilled produce to motorists traveling on the highway, and the risk to the person removing the produce should be considered when determining whether removal is reasonable.

Based on this understanding of the meaning of "reasonable removal," the next step is to determine whether Bowman produced some evidence as to this element to satisfy his burden of production. Bowman testified that he could not have spilled more than two pounds of cabbage, or approximately twenty

leaves, and that when he returned to the highway between two and three hours later, he did not see any of it.  He also testified that he did not think it was reasonable to go onto the road and risk life and limb in order to recover cabbage leaves instead of letting them decompose naturally.  Therefore, Bowman adduced some evidence that he did not need to pick up the cabbage trimmings because it would not have been reasonable, and by allowing the cabbage to decompose naturally, he did provide for reasonable removal.

As such, Bowman met his burden of production under HRS § 291C-131(c) to show "reasonable removal."  To the extent that the district court and the ICA held otherwise, they erred.

### 2. The evidence does not support a finding that the State disproved Bowman's defense beyond a reasonable doubt.

Second, if the district court found that the defense could be raised even when there was no removal, but nonetheless found that the State had disproved the defense beyond a reasonable doubt, this finding is not supported by substantial evidence.

As Bowman has contended, the State did not present additional evidence after Bowman testified that he did not think it was reasonable to risk life or limb in order to pick up cabbage trimmings that decomposed naturally.  The State did not

22

re-call Officer Fuiava to describe whether the highway was busy or empty at the time of the citation. Nor did the State introduce any other evidence that would disprove Bowman's claim that it would not have been reasonable to go back and remove the cabbage trimmings. Therefore, absent any evidence of that nature, and without more specific findings by the district court on the record, it does not appear that the State carried its burden of disproving the defense beyond a reasonable doubt.

Therefore, even though it is difficult to determine if the district court based its holding on a determination that Bowman did not meet his burden of production or on a determination that the State carried its burden of disproving Bowman's defense, the ultimate result is that the district court erred under either possibility. For this reason, we reverse the ICA and the district court's holding that there was sufficient evidence to support Bowman's conviction.[3]

### V. CONCLUSION

In sum, we conclude that under HRS § 291C-131(c), "reasonable removal" should be interpreted to mean that removal of spilled agricultural produce on a highway is only necessary when the removal is reasonable. Because Bowman adduced some

---

[3] As a result of this holding, Bowman is entitled to a refund of $257 in fines paid.

evidence to show that his removal of cabbage trimmings from the highway would have been unreasonable, and because the State did not produce evidence disproving this defense beyond a reasonable doubt, we hold that the ICA erred in affirming the district court's determination that there was sufficient evidence to convict Bowman under HRS § 291C-131. For these reasons, the ICA's judgment on appeal, which affirmed the district court's judgment of conviction, is reversed.

Benjamin E. Lowenthal
and Jo Kim for petitioner

Dale Y. Ross
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

