**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-19-0000123**
**29-MAY-2024**
**08:04 AM**
**Dkt. 122 SO**

NO. CAAP-19-0000123


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
ANIL R. JACKSON, also known as Anil Rohan Jackson,
Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 1CPC-18-0001503)


SUMMARY DISPOSITION ORDER
(By: Hiraoka, Presiding Judge, Wadsworth and Nakasone, JJ.)

Defendant-Appellant Anil R. Jackson (**Jackson**) appeals from the January 22, 2019 Judgment of Conviction and Sentence (**Judgment**) and December 17, 2020 Order Denying Motion for New Trial, both filed and entered by the Circuit Court of the First Circuit (**Circuit Court**).[1] Following a jury trial, Jackson was

---

[1] The Honorable Edward H. Kubo, Jr. entered the 2019 Judgment, presided over the 2019 jury trial and the February 4, 2019 hearing on the Motion for New Trial, and issued an oral ruling denying the motion. The Honorable Kevin A. Souza filed the December 17, 2020 Order Denying Motion for New Trial.

found guilty of Disorderly Conduct in Count 1 and Harassment in Count 2; found not guilty of Resisting Arrest in Count 3; and sentenced to thirty days imprisonment for each count to run concurrently.

On appeal, Jackson raises the following points of error (**POEs**),[2] contending that the Circuit Court erred by: (1) denying Jackson's motions for judgment of acquittal (**MJOAs**); (2) failing to conduct a sufficient pre-trial Lewis advisement and Tachibana colloquy of Jackson; (3) convicting and sentencing Jackson despite insufficient evidence of both counts; (4) sustaining Plaintiff-Appellee State of Hawaiʻi's (**State**) objection to defense counsel's "hypothetical" during closing argument and denying Jackson's related motion for a new trial on this issue; (5) denying Jackson's request to continue sentencing; (6) abusing its discretion in the sentence it imposed; and (7) denying Jackson bail pending appeal in violation of Hawaii Revised Statutes (**HRS**) § 804-4(a).

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we address the first three POEs and vacate and remand for a new trial.

The Complaint charged Jackson in Count 1 with Disorderly Conduct as a petty misdemeanor under HRS § 711-1101(1)(a) and (3), stating that Jackson, "with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, did engage in fighting or threatening, or in violent or tumultuous behavior, with intent to cause substantial harm or serious inconvenience[.]" Count 2 charged Jackson with Harassment in

---

[2]     We have restated and reordered Jackson's POEs for clarity.

violation of HRS § 711-1106(1)(a), stating that Jackson "with intent to harass, annoy, or alarm Ross K. K. Borges, did strike, shove, or otherwise touch Ross K. K. Borges in an offensive manner[.]" The pertinent trial evidence reflected that Honolulu Police Department (**HPD**) officers responded to an argument reported at an alleyway located on 2260 Kuhio Avenue in Waikiki. There, Jackson was "wrestling with another unidentified male" and "rolling around on the ground." HPD officers ordered the gathered crowd to disperse, and Jackson complied; the officers then observed a still-agitated Jackson "shove" a "random bystander . . . out of the way" and place "his right forearm" on uniformed HPD Officer Ross Borges's (**Officer Borges**) chest "to shove him out of the way." Officer Borges, the complainant in the Harassment charge in Count 2, then placed Jackson under arrest.

> **(1) The Circuit Court did not err in denying Jackson's MJOAs.**

Jackson raises two MJOA denials as error--one made after the State's opening statement, and the second at the close of the State's case-in-chief. As to the first MJOA made after the State's opening statement, Jackson argues the State "failed to establish venue" when it referenced "Waikiki" rather than the "City and County of Honolulu" in its opening statement, and the MJOA should have been granted.[3] Jackson did not argue below that "Waikiki" was insufficient to establish venue,[4] and this argument

---

[3]   Jackson's MJOA argument based on the opening statement contradicts the Circuit Court's instruction to the jury immediately preceding the opening statement, that "[o]pening statements are not evidence[.]"

[4]   The record reflects that Jackson's counsel argued that "[t]here was no reference to the location" at which the incident occurred except for a bar's name, "Alley Cats." The Circuit Court pointed out the State's reference to "Waikiki[,]" to which Jackson's counsel responded that he did not "recall" the term "Waikiki" and that "if there was no reference to Waikiki, then that's my motion." (Emphasis added.)

is waived.  See State v. Hoglund, 71 Haw. 147, 150, 785 P.2d 1311, 1313 (1990) ("Generally, the failure to properly raise an issue at the trial level precludes a party from raising that issue on appeal." (citation omitted)).

As to the second MJOA made after the State's case-in-chief, Jackson argues there was "insufficient evidence [ ] presented to support a prima facie case as to intent" for both Counts 1 and 2.  This argument lacks merit.

When reviewing a MJOA, this court must determine "whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, the evidence is sufficient to support a prima facie case so that a reasonable mind might fairly conclude guilt beyond a reasonable doubt."  State v. Jenkins, 93 Hawai'i 87, 99, 997 P.2d 13, 25 (2000) (citations omitted).  "Sufficient evidence to support a prima facie case requires substantial evidence as to every material element of the offense charged." Id. (citations omitted).

With regard to Count 1, Disorderly Conduct, Jackson was charged under HRS § 711-1101(1)(a) (2014) for engaging in "fighting or threatening, or in violent or tumultuous behavior" "with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof" and specifically charged under subsection (3), with doing so with the "intention to cause substantial harm or serious inconvenience" as a petty misdemeanor offense.  The evidence reflected that the officers observed Jackson "wrestling" on the ground with another male; after an order to disperse, Jackson walked down an alleyway "yelling and screaming," "agitated," "swearing," "threatening," and "challenging other people to fight"; Jackson then "shoved" a

4

"random bystander" "fairly violently" "with enough force to clear [the bystander] very easily out of his path of travel[,]" while there were "upwards of 20" people in the area who were dispersing. Viewing this evidence in the light most favorable to the State, there was sufficient evidence to support a prima facie case that Jackson engaged in the prohibited conduct with intent to cause substantial harm or serious inconvenience to a member or members of the public under HRS § 711-1101(1)(a) and (3). See Jenkins, 93 Hawaiʻi at 99, 997 P.2d at 25. The Circuit Court did not err in denying the MJOA on Count 1.

With regard to Count 2, Harassment, Jackson was specifically charged under HRS § 711-1106(1)(a) (2014), for striking, shoving, or otherwise touching Officer Borges "in an offensive manner" with "intent to harass, annoy, or alarm" him. The evidence reflected that Jackson, while "agitated[,]" "very tense[,]" and "using threatening language[,]" put his right forearm on the officer's chest and "violently" shoved the officer "out of his way." Viewing this evidence in the light most favorable to the State, there was sufficient evidence to support a prima facie case that Jackson engaged in the prohibited conduct of shoving Officer Borges with intent to harass, annoy, or alarm him under HRS § 711-1106(1)(a). See id. The Circuit Court did not err in denying the MJOA on Count 2.

**(2) The Circuit Court's Tachibana colloquy was defective, and the error was not harmless beyond a reasonable doubt.**

Jackson argues the Circuit Court's pretrial advisement was too detailed and "confusing," causing Jackson to not testify; the Tachibana colloquy was defective because it was conducted "at the close of [the State]'s case-in-chief" rather than "at the close of trial"; and alternatively, the Tachibana

5

colloquy was substantively deficient.  We address Jackson's last argument, as it is dispositive.

Jackson argues that the Circuit Court violated Tachibana by giving "a block warning" that was "truncated," and by failing to go over "each individual right and/or waiver with [Jackson] and ask[ ] for affirmative understanding of said right/waiver"; and that these failures rendered Jackson's waiver of the right to not testify "clearly insufficient."  This argument has merit.

"The validity of a defendant's waiver of constitutional rights in a criminal case is a question of law under the state and federal constitutions."  State v. Torres, 144 Hawaiʻi 282, 288, 439 P.3d 234, 240 (2019) (citations omitted).  "We answer questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case. Thus, we review questions of constitutional law under the right/wrong standard."  Id. (cleaned up).

The Circuit Court conducted the Tachibana colloquy as follows:

> THE COURT: Now, let's get to *Tachibana*.
>
> Mr. Jackson, as I -- as I discussed with you before the start of trial, you have a constitutional right to testify in your own defense. Although you should consult with your lawyer regarding the decision to testify, it is your decision and no one can prevent you from testifying should you choose to do so. If you decide to testify, the prosecutor will be allowed to cross-examine you.
>
> You also have a constitutional right not to testify and to remain silent. If you choose not to testify, the jury will be instructed by me that it cannot hold your silence against you in deciding your case.
>
> Do you remember us discussing this at the very beginning of the -- of the trial?

[JACKSON]: <u>I do</u>, Your Honor.

THE COURT: <u>And you remember all the questions I asked</u>, and I even broke it down into individual sentences; right?

[JACKSON]: <u>Yes, sir</u>.

THE COURT: <u>And we went over it together</u> as to what you -- how you interpret each sentence?

[JACKSON]: <u>Yes, we did</u>.

THE COURT: Now, <u>do you have any questions pertaining to these rights</u> which you do possess at this trial?

[JACKSON]: Currently <u>I do not</u>.

THE COURT: Okay. Is [sic] there any questions that you may have about these rights that I can answer for you?

[JACKSON]: Not at this moment.

THE COURT: Okay. Now, have you been able to talk to your attorney about the pros and cons, the strengths and weaknesses of testifying at this trial?

[JACKSON]: Not fully, Your Honor.

THE COURT: Would you like more time to do so?

[JACKSON]: Certainly.

THE COURT: Okay. I'm going to give you another five minutes to discuss the matter, pros and cons. . . .

[(Recess taken for defense counsel and Jackson to confer.)]

. . . .

[DEFENSE COUNSEL]: . . . And based on that discussion, Mr. Jackson will choose not to testify.

. . . .

THE COURT: You thoroughly discussed this matter with your attorney?

[JACKSON]: I have.

THE COURT: And after talking to your attorney, <u>it is</u> [sic] <u>your decision that you do not wish</u> to -- <u>to testify in this case</u>?

[JACKSON]: <u>That is correct</u>.

7

> THE COURT: Now, if you need more time to think and to discuss this, I will give you more time.
>
> [JACKSON]: I understand, Your Honor. And I'm confident in my current decision.
>
> THE COURT: <u>Are you certain in your decision that that's what you want to do</u> based on the advice and considering all the facts and circumstances?
>
> [JACKSON]: <u>Yes</u>.
>
> THE COURT: Okay. <u>Is your decision the product of your own free will</u> then?
>
> [JACKSON]: <u>It is</u>.
>
> THE COURT: <u>Is anyone threatening, pressuring, or forcing you to make this decision</u>?
>
> [JACKSON]: <u>They are not</u>.
>
> THE COURT: Okay. So bottom line, as Rufus Philburn (phonetic) or whatever his name is on that television show -- is that your final answer?
>
> [JACKSON]: Final answer, sir.
>
> THE COURT: Final answer. Okay. Okay. . . .

(Emphases added.)  The colloquy did not comply with <u>Tachibana</u>.

There are two components of a <u>Tachibana</u> colloquy: (1) "informing the defendant of fundamental principles pertaining to the right to testify and the right not to testify"; and (2) "engaging in a true 'colloquy' with the defendant[,]" which "consists of a verbal exchange between the judge and the defendant 'in which the judge ascertains the defendant's understanding of the proceedings and of the defendant's rights.'"  <u>State v. Celestine</u>, 142 Hawaiʻi 165, 170, 415 P.3d 907, 912 (2018) (cleaned up) (quoting <u>State v. Han</u>, 130 Hawaiʻi 83, 90-91, 306 P.3d 128, 135-36 (2013)).

8

In <u>Celestine</u>, where the district court simply advised the defendant of her "<u>Tachibana</u> rights" "without any discussion or exchange to ascertain the defendant's understanding of the proceedings and of the defendant's rights," the supreme court concluded there was not a "sufficient verbal exchange . . . to ascertain whether her waiver of the right to testify was based on her understanding of the principles related by the district court"; and thus, the colloquy was deficient because the record did not demonstrate a knowing, intelligent, and voluntary waiver of the right to testify. <u>Id.</u> at 171-72, 415 P.3d at 913-14 (cleaned up); <u>accord</u> <u>Han</u>, 130 Hawai'i at 90-91, 306 P.3d at 135-36 (finding colloquy defective where the family court informed defendant of the <u>Tachibana</u> rights but failed to obtain a response from defendant reflecting his understanding of these principles and instead "simply continued on with the advisement"); <u>State v. Pomroy</u>, 132 Hawai'i 85, 93-94, 319 P.3d 1093, 1101-02 (2014) (finding colloquy defective where district court did not engage in an exchange with defendant to ascertain his understanding of the right to testify and right to not testify, and instead, "recited a litany of rights" and then asked defendant "if he 'understood that'" without clarifying "which right 'that' referenced").

Here, the record does not reflect a true colloquy or exchange in which the Circuit Court ascertained Jackson's **understanding** of his rights. Instead, the Circuit Court recited a "litany of rights" as in <u>Pomroy</u>, 132 Hawai'i at 93, 319 P.3d at 1101, then asked Jackson if he "remember[ed]" a prior discussion of "<u>this</u> at the very beginning" of trial; stating that they "went over <u>it</u> together" as to "how you interpret each sentence[.]" (Emphases added.) This was not sufficient where

9

the record contains no clarification as to which right was previously discussed with Jackson.  The Circuit Court never asked or ascertained whether Jackson understood each right.  Asking Jackson whether he had "any questions . . . about these rights" does not constitute an ascertainment of Jackson's understanding of each right.  See Celestine, 142 Hawai'i at 170, 415 P.3d at 912.  "The constitutional right to testify is violated when the Tachibana colloquy is inadequate to provide an 'objective basis' for finding the defendant 'knowingly, intelligently, and voluntarily' relinquished his or her right to testify."  Id. at 171, 415 P.3d at 913 (citation omitted).  The record does not contain an express finding by the Circuit Court that Jackson knowingly, intelligently, and voluntarily waived his right to testify, nor does this record support such a finding.  See id.

The State argues, inter alia, that the colloquy was sufficient because the Circuit Court "had a thorough discussion with Jackson in the *Lewis* advisement and Jackson affirmatively acknowledged that he recalled the discussion."  In State v. Eduwensuyi, the Hawai'i Supreme Court held that it is "inherently problematic" to assume that a "pretrial advisement can serve as a substitute for deficiencies in the ultimate colloquy." 141 Hawai'i 328, 335, 409 P.3d 732, 739 (2018).  The supreme court explained that "the commencement of the trial, is an event where a defendant may be anxious or nervous and not listening effectively"; that "the defendant is told that the pretrial advisement is preliminary in nature and that the subject matter will be addressed fully at a later point"; and that the court cannot assume that "the defendant is able to correctly recall a pretrial advisory at the end of trial."  Id.

"Once a violation of the constitutional right to testify is established, the conviction must be vacated unless the State can prove that the violation was harmless beyond a reasonable doubt.  The relevant question 'is whether there is a reasonable possibility that the error might have contributed to the conviction.'"  Celestine, 142 Hawaiʻi at 173, 415 P.3d at 915 (cleaned up).  From our review of the record, we cannot conclude that the Circuit Court's error was harmless because Jackson's testimony, had he given it, could have established reasonable doubt that he committed either offense he was convicted of.  See id.  Thus, Jackson's convictions must be vacated, and we next consider whether there is sufficient evidence to support a retrial.

**(3) There was sufficient evidence presented to support the convictions for both offenses.**

Jackson contends in his point of error that there was insufficient evidence to support his conviction on both counts. "It is well-settled that, even where this court finds trial error, challenges to the sufficiency of the evidence must always be decided on appeal. This is because the double jeopardy clause bars retrial of a defendant once a reviewing court has found the evidence at trial to be legally insufficient to support a conviction." State v. Kalaola, 124 Hawaiʻi 43, 59, 237 P.3d 1109, 1125 (2010) (cleaned up); see Pomroy, 132 Hawaiʻi at 94, 319 P.3d at 1102 (addressing evidentiary sufficiency after finding that the violation of constitutional right to testify was not harmless beyond a reasonable doubt).  In reviewing the sufficiency of evidence on appeal, we apply the same standard for review of a MJOA.  See State v. Bowman, 137 Hawaiʻi 398, 405, 375 P.3d 177, 184 (2016).  For the same reasons set forth supra affirming the denial of Jackson's MJOA, which we incorporate

11

here, there was sufficient evidence viewed in the light most favorable to the State, supporting Jackson's convictions for both Disorderly Conduct and Harassment.  See Jenkins, 93 Hawaiʻi at 99, 997 P.2d at 25.  Thus, the prohibition against double jeopardy does not bar a retrial in this case.  See Kalaola, 124 Hawaiʻi at 59, 237 P.3d at 1125.

In light of our resolution, we need not address Jackson's remaining points of error.

For the foregoing reasons, the January 22, 2019 Judgment of Conviction and Sentence and December 17, 2020 Order Denying Motion for New Trial are vacated, and we remand for a new trial.

DATED:  Honolulu, Hawaiʻi, May 29, 2024.

On the briefs:

Kai Lawrence,
for Defendant-Appellant.

Sonja P. McCullen,
Deputy Prosecuting Attorney
for Plaintiff-Appellee.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge