**Electronically Filed
Supreme Court
SCWC-14-0000335
12-APR-2018
08:41 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

RITALYNN MOSS CELESTINE,
Petitioner/Defendant-Appellant.

SCWC-14-0000335

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0000335; CASE NO. 1DTA-13-00956)

APRIL 12, 2018

McKENNA, POLLACK, AND WILSON, JJ., WITH RECKTENWALD, C.J.,
DISSENTING, WITH WHOM NAKAYAMA, J., JOINS

OPINION OF THE COURT BY POLLACK, J.

This appeal arises from a challenge by Ritalynn Moss Celestine to her conviction based on the validity of her waiver of the right to testify at trial. We hold that the record does not support a conclusion that Celestine's waiver of the right to testify was voluntarily, intelligently, and knowingly made. Because the error was not harmless beyond a reasonable doubt, we

vacate the conviction and remand the case for further proceedings.

## I. BACKGROUND

On February 24, 2013, around 2:40 a.m., an officer of the Honolulu Police Department driving along Meheula Parkway saw Celestine's vehicle in the "planter area."[1]  It appeared to the officer that the vehicle had jumped the curb.  After Celestine exited her vehicle, the officer noticed a strong odor of alcohol emitting from Celestine's breath and that her eyes were red, bloodshot, and glassy.  The officer requested that Celestine perform three field sobriety tests.  According to the responding officer, Celestine demonstrated clues suggesting intoxication on all three tests, and she was subsequently placed under arrest.[2]

At the police station, an officer read Celestine the implied consent form for testing, which provided, inter alia, as follows: "if you refuse to submit to a breath, blood or urine test, you shall be subject to up to 30 days imprisonment and/or a fine of up to a thousand dollars."  Celestine refused the blood test but opted to take the breath test.  About 3:15 a.m.,

---

[1]     Celestine explained to the officer that her GPS had led her there and that she was looking for Makapipipi Street.

[2]     The officer acknowledged that it is possible to fail the field sobriety tests without being under the influence of alcohol or drugs and that the tests provide "clues" to further the investigation.

Celestine underwent an Intoxilyzer 8000 breath test. Celestine's breath alcohol content was 0.098 grams of alcohol per 210 liters of breath.

## A. District Court Proceedings

On March 12, 2013, Celestine was charged by complaint in the District Court of the First Circuit (district court) with operating a vehicle under the influence of an intoxicant in violation of Hawaii Revised Statutes (HRS) § 291E-61(a)(1)[3] and/or (a)(3).[4] Celestine pleaded not guilty to the charge.

At trial,[5] prior to the presentation of evidence, the district court advised Celestine as follows:

> THE COURT: Okay. Miss Celestine, to advise you of your rights at trial, at some point in time the State will rest, okay, and you'll have an opportunity to testify or remain silent. Should you choose to remain silent, the

___

[3] HRS § 291E-61(a)(1) (Supp. 2012) provides as follows:

A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

. . .

(1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

[4] HRS § 291E-61(a)(3) (Supp. 2012) provides as follows: "A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle: . . . [w]ith .08 or more grams of alcohol per two hundred ten liters of breath."

[5] The Honorable Lono J. Lee presided.

Court can infer no guilt because of your silence. Basically, you'll be invoking your Fifth Amendment right against self-incrimination.

Okay, you understand?

THE DEFENDANT: Yes, sir.

THE COURT: However, if you do wish to testify, you need to be sworn in, you're also subject to cross-examination by the State's attorney. Okay?

THE DEFENDANT[6]: Okay. And when the State does rest, okay, I'll remind you again, okay, I have to finish this even though we're doing this piece -- piecemeal today. All right. Any questions? Okay. Thank you.

After the State rested,[7] the defense advised the court that it would not be presenting evidence. The court then proceeded with the Tachibana colloquy:

THE COURT: Okay. For defense case, okay, Miss Moss Celestine?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Just in caution, okay, I had explained to you, okay, on the 12th that you had the right to testify and the right to remain silent, okay. They call this your Tachibana rights. It's based on a case law that the appellate court found that the trial court needed to inform you of your rights, okay. If you chose not to testify, the Court could infer no guilt because of your silence; basically you would be invoking your Fifth Amendment right against self-incrimination. Okay. On the other hand, if you do wish to testify, you need to be sworn in, you also will be subject to cross-examination by the State's attorney.

Okay. Your attorney just indicated to the Court that you will not be testifying. Is that correct?

THE DEFENDANT: Yes, sir.

---

[6]     It appears this statement was made by the district court and incorrectly attributed to Celestine in the transcript of the proceedings.

[7]     The State's evidence included the events described in the introductory paragraphs of the Background section, see supra.

> THE COURT: Okay. Is anybody forcing you not to testify?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Okay. It's your own decision?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay, very good . . . .

Following the colloquy, the district court heard Celestine's motion to suppress her breath test results, which the court denied.

The district court found Celestine guilty as charged under HRS § 291E-61(a)(1) and HRS § 291E-61(a)(3) and imposed sentence.[8] Celestine timely filed a notice of appeal to the Intermediate Court of Appeals (ICA).

### B. ICA Proceedings

In her opening brief, Celestine set forth two points of error: (1) the district court erred in denying her motion to suppress, and (2) the district court violated her constitutional right to testify when it failed to conduct a proper Tachibana colloquy. The State responded that the court's Tachibana colloquy was adequate and that, in the alternative, any error was harmless beyond a reasonable doubt.

---

[8] The district court sentenced Celestine to the following: pay a fine in the amount of $500; pay fees totaling $162; participate in a 14-hour substance abuse rehabilitation program; and participate in a substance abuse assessment and treatment program if necessary. The district court further ordered that Celestine's license be revoked for a period of one year.

In a summary disposition order, the ICA affirmed Celestine's conviction.[9] The ICA concluded that the district court's end-of-trial Tachibana colloquy was adequate and that Celestine's waiver of the right to testify was validly made.[10]

Chief Judge Nakamura dissented, concluding that the district court erred by failing to adequately advise Celestine that if she wanted to testify, no one could prevent her from doing so. Because Celestine did not testify at trial, the dissent concluded that the error was not harmless.

## II. STANDARD OF REVIEW

The validity of a defendant's waiver in a criminal case of the right to testify is a question of constitutional law reviewed by this court under the right/wrong standard. See State v. Gomez-Lobato, 130 Hawai'i 465, 468-69, 312 P.3d 897, 900-01 (2013).

## III. DISCUSSION

Hawai'i law has historically protected both the right to testify and the right not to testify. State v. Monteil, 134

---

[9]     The ICA's summary disposition order can be found at State v. Celestine, No. CAAP-14-0000335, 2016 WL 3573992 (Haw. App. June 29, 2016) (SDO).

[10]     The ICA also concluded that it need not resolve whether the district court erred in denying Celestine's motion to suppress the breath test results because the district court's finding of guilt under HRS § 291E-61(a)(1) (impairment of driver's mental faculties or abilities while under the influence of alcohol) could independently serve as a basis for the conviction in this case.

Hawai'i 361, 369, 341 P.3d 567, 575 (2014). The right to testify is guaranteed by the Fifth and Sixth Amendments to the United States Constitution; the Hawai'i Constitution's parallel guarantees under article I, sections 5, 10, and 14; and HRS § 801-2. State v. Pomroy, 132 Hawai'i 85, 91, 319 P.3d 1093, 1099 (2014). The right not to testify is guaranteed by the United States Constitution's Fifth Amendment guarantee against compelled testimony and the Hawai'i Constitution's parallel guarantee under article I, section 10. Monteil, 134 Hawai'i at 369, 341 P.3d at 575.

To protect the fundamental right to testify, this court in Tachibana v. State established the requirement that when a defendant in a criminal case indicates an intention not to testify, the trial court must advise the defendant of the right to testify and must obtain an on-the-record waiver of this right. 79 Hawai'i 226, 236, 900 P.2d 1293, 1303 (1995) (footnotes omitted). An on-the-record waiver assures that the defendant is "aware of [the] right to testify and that [the defendant] knowingly and voluntarily waive[s] that right." Id. at 234-37, 900 P.2d at 1301-04. The Tachibana court also determined that "the ideal time to conduct the colloquy is

7

immediately prior to the close of the defendant's case."[11]  Id. at 237, 900 P.2d at 1304.

There are two components of a Tachibana colloquy.  The first is informing the defendant of fundamental principles pertaining to the right to testify and the right not to testify. Id. at 236 n.7, 900 P.2d at 1303 n.7.  We stated that this advisement should consist of the following information:

> that he [or she] has a right to testify, that if he [or she] wants to testify that no one can prevent him [or her] from doing so, [and] that if he [or she] testifies the prosecution will be allowed to cross-examine him [or her]. In connection with the privilege against self-incrimination, the defendant should also be advised that he [or she] has a right not to testify and that if he [or she] does not testify then the jury can be instructed about that right.

Id. (alterations in original) (citation omitted).

The second component of the Tachibana colloquy involves the court engaging in a true "colloquy" with the defendant.  State v. Han, 130 Hawai'i 83, 90-91, 306 P.3d 128, 135-36 (2013).  This portion of the colloquy consists of a verbal exchange between the judge and the defendant "in which

---

[11]  In addition to requiring a Tachibana colloquy when a defendant has indicated an intent not to testify, we stated that trial courts must conduct a pretrial advisement in which the defendant is informed of his or her personal right to testify or not to testify; alert the defendant that if he or she has not testified by the end of trial, the court will question the defendant to ensure it was his or her own decision not to testify; and advise the defendant that the exercise of the right not to testify may not be used by the factfinder against the defendant.  State v. Lewis, 94 Hawai'i 292, 297, 12 P.3d 1233, 1238 (2000); Monteil, 134 Hawai'i at 373, 341 P.3d at 579.

the <u>judge ascertains the defendant's understanding</u> of the proceedings and of the defendant's rights." <u>Id.</u> at 90, 306 P.3d at 135 (quoting <u>Black's Law Dictionary</u> 300 (9th ed. 2009)).

The verbal exchange is to ensure that the information conveyed by the judge has been understood by the defendant and that the defendant's decision not to testify has been made with an understanding of the defendant's rights. <u>Id.</u> at 90-91, 306 P.3d at 135-36 ("[T]he transcript does not indicate that a true 'colloquy' took place. Instead, the court simply advised Petitioner of his rights, without any 'discussion,' 'exchange' or ascertainment that Petitioner understood his rights."); <u>Pomroy</u>, 132 Hawai'i at 93, 319 P.3d at 1101 (holding that the <u>Tachibana</u> colloquy was "defective" in part because the district court merely "recited a litany of rights" and then asked the defendant "if he 'understood that,'" without clarifying "which right 'that' referenced").

To accomplish the purposes of a true colloquy, we have suggested that the trial court engage in a verbal exchange with the defendant at least twice during the colloquy in order to ascertain the defendant's "understanding of significant propositions in the advisement." <u>Han</u>, 130 Hawai'i at 90, 306 P.3d at 135. The first time is after the court informs the defendant of the right to testify and of the right not to

testify and the protections associated with these rights.  Id.
The purpose of this exchange is for the court to ascertain the
defendant's understanding of these important principles.

The second time we suggested a verbal exchange should
occur is after the court indicates to the defendant its
understanding that the defendant does not intend to testify.[12]
Id. at 91, 306 P.3d at 136.  This inquiry enables the court to
determine whether the defendant's decision to not testify is
made with an understanding of the principles that have been
explained to the defendant.  Id.  As part of this inquiry, the
trial court elicits responses as to whether the defendant
intends to not testify, whether anyone is forcing the defendant
not to testify, and whether the decision to not testify is the
defendant's.  Id.

The constitutional right to testify is violated when
the Tachibana colloquy is inadequate to provide an "objective
basis" for finding the defendant "knowingly, intelligently, and
voluntarily" relinquished his or her right to testify.  Id.  In
determining whether a waiver of the right to testify was

_____

[12]    The fact that the court is conducting the Tachibana colloquy with
the defendant generally indicates that defense counsel has informed the court
that the defendant does not intend to testify.  See Lewis, 94 Hawai'i at 296-
97, 12 P.3d at 1237-38 ("[W]e hold the court need not engage in a Tachibana
colloquy except where the defendant has indicated that he or she will not
testify[.]").

10

voluntarily and intelligently made, this court looks to the totality of the facts and circumstances of each particular case. Id. at 89, 306 P.3d at 134.

In this case, the Tachibana colloquy was deficient because the district court did not adequately fulfill the second component of the Tachibana colloquy.

**A. The District Court Did Not Engage Celestine In A True Colloquy**

Celestine argues that the district court's Tachibana colloquy was defective because the district court failed to engage in a true exchange with her.[13] As discussed, beyond advising defendants of the rights afforded to them, a court must engage defendants in a true colloquy to ascertain whether the defendant understands the right to testify and the right not to testify and whether the decision not to testify is made with an understanding of these rights. Han, 130 Hawai'i at 90-91, 306 P.3d at 135-36.

---

[13] Citing the ICA dissent, Celestine reasserts in her application for a writ of certiorari that the Tachibana colloquy was prejudicially inadequate because the district court failed to advise her that if she wanted to testify, no one could prevent her from doing so. See State v. Eduwensuyi 141 Hawai'i 328, 409 P.3d 732, 737-38 (2018) (discussing the significance of this advisement in the Tachibana colloquy). Our disposition in this case renders it unnecessary to address this omission in the colloquy as an independent ground for vacating Celestine's conviction.

11

The first time the district court should have engaged in a verbal exchange to ascertain Celestine's understanding was after the court advised her of the following principles:

> Just in caution, okay, I had explained to you, okay, on the 12th that you had the right to testify and the right to remain silent, okay. They call this your Tachibana rights. It's based on a case law that the appellate court found that the trial court needed to inform you of your rights, okay. If you chose not to testify, the Court could infer no guilt because of your silence; basically you would be invoking your Fifth Amendment right against self-incrimination. Okay. On the other hand, if you do wish to testify, you need to be sworn in, you also will be subject to cross-examination by the State's attorney.

Instead of ascertaining at this juncture of the colloquy whether Celestine understood the fundamental principles stated, the court simply proceeded with the advisement. Han, 130 Hawaiʻi at 90-91, 306 P.3d at 135-36.

In Han, the family court informed the defendant that he had a right to testify, that no one could force him to testify, that he had a "right to remain silent," and that if he exercised his right to remain silent the jury would be instructed not to hold it against him. Id. at 90, 306 P.3d at 135. We determined that the court should have obtained a response from the defendant as to his understanding of these principles. Id. at 90-91, 306 P.3d at 135-36. Instead, the court "simply continued on with the advisement." Id. at 91, 306 P.3d at 136.

12

Similarly, in Pomroy, we held that the district court did not engage in a discussion or exchange with the defendant to ascertain his understanding of his right to testify and his right not to testify. 132 Hawai'i at 94, 319 P.3d at 1102. We reasoned in part that "the district court recited a litany of rights" and then asked the defendant if he "understood that" without clarifying "which right 'that' referenced." Id. at 93, 319 P.3d at 1101.

Thus, as in Han and Pomroy, the district court in this case simply advised Celestine of her rights without any discussion or exchange to "ascertain[] the defendant's understanding of the proceedings and of the defendant's rights." Han, 130 Hawai'i at 90, 306 P.3d at 135 (emphasis omitted);[14] accord Pomroy, 132 Hawai'i at 94, 319 P.3d at 1102.

_____

[14] The dissent interprets the Han decision as having been dependent on the presence of a salient fact. Dissent at 3-4. The decision clearly indicates otherwise. In part VII-A of the opinion, this court concluded that "the transcript does not indicate that a true 'colloquy' took place." Han, 130 Hawai'i at 90, 306 P.3d at 135. We then held, after examining the colloquy, that the "failure to ensure that Petitioner understood his rights amounts to a failure to obtain the on-the-record waiver required by Tachibana." Id. at 91, 306 P.3d at 136. The Han court thus concluded that the trial court did not have "an objective basis for finding" that Han validly waived his rights. Id. Only after reaching this conclusion in Part VII-A of the opinion did we then go on to consider the salient fact of a language barrier. In Part VII-B of the opinion, we noted that the presence of a salient fact "underscores the importance of the court's colloquy as a procedural safeguard that protects a defendant's right to testify or to not testify." Id. at 92, 306 P.3d at 137. Moreover, we determined that the presence of a salient fact--the defendant's need for an interpreter--only made the court's error in failing to ensure Han's understanding "more

(continued . . .)

13

The second time the district court should have engaged in a verbal exchange with Celestine to ascertain her understanding was after the court stated the following: "Your attorney just indicated to the Court that you will not be testifying.  Is that correct?"  Celestine's response of "Yes, sir" to the court's question does not indicate whether she was expressing that she did not wish to testify or merely confirming that her attorney had just told the court she would not be testifying.  See Han, 130 Hawai'i at 91, 306 P.3d at 136 (holding that although the defendant responded "Yes" to the court's statement that "[t]he decision not to testify is yours and yours alone after you have discussed the matter with your attorney," it was unclear if the defendant was responding "Yes"--that he understood the decision was his alone, or "Yes"--that he had discussed the matter with his attorney).

The remainder of the district court's Tachibana colloquy only consisted of the following:

> THE COURT: Is anybody forcing you not to testify?
>
> THE DEFENDANT: No, sir.

---

(. . . continued)

egregious."  Id. (emphasis added).  The salient fact therefore only exacerbated the trial court's failure.  Id.  Hence, the dissent incorrectly contends that Han is distinguishable because there was no showing of a salient fact that might have prevented Celestine from understanding the court's advisements.  Dissent at 10.

> THE COURT: Okay.  It's your own decision?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay, very good . . . .

Celestine's "No" response to the court's inquiry of whether anyone was forcing her not to testify does not indicate that she understood she had a constitutional right to testify, only that no one was forcing her not to testify.  See Han, 130 Hawai'i at 91, 306 P.3d at 136 (holding that the defendant's "No" response to the court's inquiry as to whether anyone was threatening or forcing him not to testify did not demonstrate his understanding of his right to testify).  And the final question ("It's your own decision?") does not cure the inadequacy in the court's colloquy as the court "did not inquire into other matters of constitutional magnitude."  Id.

The district court thus did not engage in a sufficient verbal exchange with Celestine to ascertain whether her waiver of the right to testify was based on her understanding of the principles related by the district court.[15]  Because the court's

---

[15]    Our decision is not intended to establish that the verbal exchange must occur at specific junctures in the colloquy.  A trial court is required, however, to engage the defendant in a true colloquy to ascertain the defendant's understanding of the significant rights stated and to ensure that the defendant's decision not to testify is made with an understanding of these rights.  Han, 130 Hawai'i at 90-91, 306 P.3d at 135-36.  This approach is not mere formalism as asserted by the dissent.  Dissent at 6.  Rather, it enables a court to establish a record that demonstrates a knowing,

(continued . . .)

15

colloquy with Celestine was deficient as to this essential requirement, the record does not demonstrate that Celestine's waiver of the right to testify was knowingly, intelligently, and voluntarily made.[16]  See Han, 130 Hawai'i at 91-93, 306 P.3d at 136-38.  The ICA erred in concluding to the contrary.

## B. The District Court's Error Was Not Harmless Beyond A Reasonable Doubt

The Tachibana colloquy in this case was deficient because the district court did not engage in a true colloquy with Celestine to ascertain her understanding of the constitutional principles stated and to ensure that Celestine's decision not to testify was made with an understanding of these principles.[17]

---

(. . . continued)

intelligent, and voluntary waiver of the right to testify.  Han, 130 Hawai'i at 90-91, 306 P.3d at 135-36.

[16]     The dissent relies on the pretrial advisement that was conducted five days before the Tachibana colloquy to "mitigate" the error in this case and to thus support the conclusion that Celestine's waiver of the right to testify was made knowingly and voluntarily.  Dissent at 10.  However, the pretrial advisement not only omitted the advisory that was also absent from the Tachibana colloquy--that if Celestine wanted to testify no one could prevent her from doing so--but the dissent's assumption of mitigation is also inconsistent with our rejection of an approach that "treats all defendants alike in terms of their ability to understand and recall the initial advisory."  State v. Eduwensuyi, 141 Hawai'i 328, 409 P.3d 732, 739 (2018).

[17]     More than twenty years ago, the Tachibana court concluded that the colloquy requirement "will best protect defendants' rights while maintaining the integrity of the criminal justice system."  Tachibana, 79 Hawai'i at 234, 900 P.2d at 1301.  In so concluding, the Tachibana court stated that trial courts "must obtain an on-the-record waiver of that right

(continued . . .)

16

"Once a violation of the constitutional right to testify is established, the conviction must be vacated unless the State can prove that the violation was harmless beyond a reasonable doubt." Pomroy, 132 Hawai'i at 94, 319 P.3d at 1102 (quoting Tachibana, 79 Hawai'i at 240, 900 P.2d at 1307). The relevant question "is whether there is a reasonable possibility that [the] error might have contributed to [the] conviction." Han, 130 Hawai'i at 93, 306 P.3d at 138 (quoting State v. Schnabel, 127 Hawai'i 432, 450, 279 P.3d 1237, 1255 (2012)). From our review of the record, we cannot conclude that the district court's error was harmless because it is not knowable whether Celestine's testimony, had she given it, could have established reasonable doubt that she operated a vehicle under the influence of an intoxicant in violation of HRS § 291E-

---

(. . . continued)

in every case in which the defendant does not testify." Id. at 236, 900 P.2d at 1303. A trial court's failure to engage in a true verbal exchange with the defendant to ensure the defendant understood his or her rights amounts to a failure to obtain the on-the-record waiver that Tachibana requires. Han, 130 Hawai'i at 91, 306 P.3d at 136. When the Tachibana colloquy is inadequate to provide an "objective basis" for finding the defendant "knowingly, intelligently, and voluntarily" relinquished the right to testify, the constitutional right to testify is violated. State v. Eduwensuyi, 141 Hawai'i 328, 409 P.3d 732, 737 (2018) (quoting Han, 130 Hawai'i at 91, 306 P.3d at 136).

61(a)(1).[18]  See Pomroy, 132 Hawai'i at 94, 319 P.3d at 1102.

Thus, Celestine's conviction under HRS § 291E-61(a)(1) must be vacated.[19]

### IV.   CONCLUSION

Based on the foregoing, the ICA's July 26, 2016 Judgment on Appeal and the district court's September 17, 2013 and December 17, 2013 Notices of Entry of Judgment and/or Order and Plea/Judgment are vacated, and the case is remanded to the district court for further proceedings.

James S. Tabe                    /s/ Sabrina S. McKenna
for petitioner
                                 /s/ Richard W. Pollack

                                 /s/ Michael D. Wilson



---

[18]    At trial, the responding officer testified to the following: Celestine explained to him that her GPS had led her to where her vehicle was discovered; it is possible to fail the field sobriety tests without being under the influence of alcohol or drugs; and the tests provide only "clues" to further the investigation.

[19]    Celestine was also convicted under HRS § 291E-61(a)(3) based on the results of her breath test.  Pursuant to State v. Won, 137 Hawai'i 330, 372 P.3d 1065 (2015), Celestine's conviction under HRS § 291E-61(a)(3) must also be vacated.  See Won, 137 Hawai'i at 349, 355 n.49, 372 P.3d at 1084, 1090 n.49 (holding that because "the threat of criminal sanctions inherently precludes a finding of voluntariness," the defendant's consent to a breath test was not voluntary and therefore the district court erred in not suppressing the results of the defendant's breath test).