**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000045
09-MAY-2022
08:10 AM
Dkt. 43 SO**

NO. CAAP-20-0000045

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
ETHAN G.K. NEVES, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1DTC-18-505607)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Hiraoka and Nakasone, JJ.)

Defendant-Appellant Ethan G.K. Neves (**Neves**) appeals from the Judgment filed December 30, 2019 (**Judgment**), in the District Court of the First Circuit (**District Court**)[1] convicting Neves of driving with a revoked, suspended or otherwise restricted motor vehicle license pursuant to Hawaii Revised Statutes (HRS) § 291E-62(a)(1), (2) and (c)(1).[2]

---

[1] The Honorable James Kawashima presided.

[2] HRS § 291E-62 (Supp. 2018) provides in part:

> (a)   No person whose license and privilege to operate a vehicle have been revoked, suspended, or otherwise restricted . . . shall operate or assume actual physical control of any vehicle:
>
> > (1)   In violation of any restrictions placed on the person's license;

(continued...)

On appeal, Neves raises four points of error: (1) the District Court failed to engage in a sufficient <u>Tachibana</u> colloquy with Neves; (2) the <u>Tachibana</u> colloquy error was not harmless beyond a reasonable doubt; (3) the District Court improperly admitted into evidence Plaintiff-Appellee State of Hawaiʻi's (**State**) Exhibit 7 - the Notice of Administrative Revocation (**NOAR**); and (4) there was insufficient evidence to establish Neves' guilt beyond a reasonable doubt.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issued raised by the parties, we affirm.

**Points of error (1) and (2):**  During a bench trial, the District Court heard from two witnesses, considered seven exhibits, and conducted the following colloquy under <u>Tachibana v. State</u>, 79 Hawaiʻi 226, 237, 900 P.2d 1293, 1304 (1995):

> THE COURT:  Okay.  You can remain seated, Mr. Neves -- well, actually, no.  You do have to rise, Mr. Neves.  I have to go through the rights to testify again.

---

[2](...continued)

> (2)    While the person's license or privilege to operate a vehicle remains suspended or revoked;
>
> . . . .
>
> (c)    Any person convicted of violating this section shall be sentenced as follows without possibility of probation or suspension of sentence:
>
> (1)    For a first offense, or any offense not preceded within a five-year period by conviction for an offense under this section . . .:
>
> > (A)    A term of imprisonment of not less than three consecutive days but not more than thirty days;
> >
> > (B)    A fine of not less than $250 but not more than $1,000;
> >
> > (C)    Revocation of license and privilege to operate a vehicle for an additional year; and
> >
> > (D)    Loss of the privilege to operate a vehicle equipped with an ignition interlock device, if applicable[.]

So you understand what your lawyer said, defense rests?

THE DEFENDANT:  Yes.

THE COURT:  And just to be safe, in your words, what does that mean?

THE DEFENDANT:  That we are done arguing.

THE COURT:  Okay.  It also means that you will not have the opportunity to testify and tell your side of the story.  You understand that?

THE DEFENDANT:  Yes.

THE COURT:  And if you want to tell your side of the story under oath, you can do it even if your lawyer thinks you shouldn't.  You understand?

THE DEFENDANT:  Yes.

THE COURT:  It does mean the prosecutor will get to ask you questions, too, however.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  But if you want to remain silent, you also have that right.  You understand?

THE DEFENDANT:  Yes.

THE COURT:  And if you choose to not testify, no one can force you to testify.  You understand?

THE DEFENDANT:  Yes.

THE COURT:  And your silence will not be used against you and cannot be used against you if you choose not to testify.  You understand?

THE DEFENDANT:  Yes.

THE COURT:  You have any questions for me about these rights to testify or not testify?

THE DEFENDANT:  I do not.

THE COURT:  Then what is your choice?

THE DEFENDANT:  Not testify.

THE COURT:  Thank you.  You can have a seat.

And the court does find defendant's knowingly, voluntarily, intelligently waiving his right to testify and exercising his right to remain silent in this matter.

Proceed to closing.  State.

"In determining whether a waiver of the right to testify was voluntarily and intelligently made, this court looks

to the totality of the facts and circumstances of each particular case." State v. Celestine, 142 Hawaiʻi 165, 171, 415 P.3d 907, 913 (2018) (citation omitted).

A Tachibana colloquy requires the following:

> There are two components of a Tachibana colloquy.  The first is informing the defendant of fundamental principles pertaining to the right to testify and the right not to testify.  We stated that this advisement should consist of the following information:
>
>> that he [or she] has a right to testify, that if he [or she] wants to testify that no one can prevent him [or her] from doing so, [and] that if he [or she] testifies the prosecution will be allowed to cross-examine him [or her].  In connection with the privilege against self-incrimination, the defendant should also be advised that he [or she] has a right not to testify and that if he [or she] does not testify then the jury can be instructed about that right.
>
>> The second component of the Tachibana colloquy involves the court engaging in a true "colloquy" with the defendant.  This portion of the colloquy consists of a verbal exchange between the judge and the defendant "in which the judge ascertains the defendant's understanding of the proceedings and of the defendant's rights."

Id. at 170, 415 P.3d at 912 (citations and underline omitted).

First, Neves argues that the Tachibana colloquy was defective because it was posed after Neves rested.  Timing alone, without more, does not constitute reversible error.

> [T]he ideal time to conduct the colloquy is immediately prior to the close of the defendant's case. Therefore, whenever possible, the trial court should conduct the colloquy at that time.
>
> If the trial court is unable to conduct the colloquy at that time, however, such failure will not necessarily constitute reversible error.  If a colloquy is thereafter conducted and the defendant's waiver of his or her right to testify appears on the record, such waiver will be deemed valid unless the defendant can prove otherwise by a preponderance of the evidence.

Tachibana, 79 Hawaiʻi at 237, 900 P.2d at 1304 (footnote and citation omitted).  Neves does not proffer any evidence or allege any harm caused by the timing of the Tachibana colloquy.  As such, Neves' claimed error with respect to timing of the Tachibana colloquy is without merit.

4

Second, Neves argues that the District Court did not engage in a true <u>Tachibana</u> colloquy because the District Court failed to include background questions such as the ability to understand English, education, mental status, and state of mind. There is no requirement that the District Court ask defendants background questions during a <u>Tachibana</u> colloquy.  <u>See</u> <u>Celestine</u> 142 Hawaiʻi at 170, 415 P.3d at 912 (containing no background question requirement).  Moreover, the record shows that the District Court asked Neves background questions, such as his name, age, and ability to understand English, at the beginning of trial, and Neves intelligently responded to each question during the District Court's colloquies.  The District Court engaged in a true colloquy and Neves' argument to the contrary lacks merit.

Third, Neves argues that the colloquy was defective because the District Court "never listed Defendant's rights in terms of the 'right to testify' and the 'right not to testify.'" Neves disregards the substance of the colloquy, particularly where the District Court informed Neves of all <u>Tachibana</u> elements and engaged in a true colloquy, and that no fewer than six times the District Court asked Neves whether he "understood" aspects of the colloquy and Neves responded intelligently, including stating his choice that he would "not testify."  Thus, Neves' point of error with respect to the District Court's wording of the colloquy lacks merit.

Under the totality of the facts and circumstances, the record supports the District Court's finding that Neves' waiver of the right to testify was voluntarily and intelligently made. Consequently, Neves' second point of error – asserting a <u>Tachibana</u> colloquy error was not harmless beyond a reasonable doubt – is also without merit.

**Point of error (3)**:  In his third point of error, Neves asserts the District Court erred in admitting the NOAR because it was not certified and because it was part of the police report such that it could not "be used to obviate the public records

hearsay exception." Neves relies on State v. Abrigo, 144 Hawaiʻi 491, 445 P.3d 72 (2019), but Abrigo is inapposite to this case.

"Evidentiary rulings are reviewed for abuse of discretion, unless application of the rule admits of only one correct result, in which case review is under the right/wrong standard." State v. Loa, 83 Hawaiʻi 335, 348, 926 P.2d 1258, 1271 (1996) (citation omitted).

In this case, Neves was charged with driving on November 21, 2018, while his license was suspended or revoked due to operation of a vehicle under the influence of an intoxicant (**OVUII**). Officer James Spiker (**Officer Spiker**) testified that previously, on October 11, 2018, he had completed the NOAR when Neves was arrested for OVUII. Officer Spiker testified as to Neves' identity, that Officer Spiker filled in the NOAR with information obtained from Neves while he was detained at the police station, and that Neves signed the form after it was read to him verbatim. Thus, Officer Spiker authenticated the NOAR and it did not need to be certified by the Administrative Driver's License Revocation Office (**ADLRO**).

Further, the NOAR form was not part of the police report. ADLRO is a component of the Hawaiʻi Judiciary, acting under the authority of the Administrative Director of the Courts and in accordance with HRS Chapter 291E. See HRS § 291E-1;[3] HRS ch. 291E, pt. III. A police officer completes the NOAR and it is submitted to the ADLRO for administrative review. See §§ 291E-33(c), 291E-36(a)(6) or (b)(2), 291E-37. As Officer Spiker testified, it is a form created by ADLRO, he filled out the NOAR related to Neves, read it to Neves, and sent it to ADLRO. Given the evidence, the District Court did not abuse its discretion by admitting the NOAR for "informational and indentificational purposes."

---

[3] For purposes of HRS Chapter 291E, "Director" is defined as "the administrative director of the courts or any other person within the judiciary appointed by the director to conduct administrative reviews or hearings or carry out other functions relating to administrative revocation under part III.

**Point of error (4):**  In his final point of error, Neves asserts there was insufficient evidence for a conviction.  "The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact."  State v. Batson, 73 Haw. 236, 248, 831 P.2d 924, 931 (1992) (citations omitted).

Contrary to Neves' assertion, the record includes, *inter alia*:  testimony of two officers identifying Neves as the individual cited on October 11, 2018, and November 21, 2018; a NOAR completed with information obtained from Neves (Exhibit 7) and a certified ADLRO decision (Exhibit 2) establishing a license revocation period of November 11, 2018, through November 10, 2019; and a certified traffic abstract (Exhibit 1) and a photo of a State identification card (Exhibit 4), which when viewed together with other exhibits and testimony, identify Neves, contain Neves' name and address, and also include matching dates of birth and the last four digits of a social security number.

Taken together, there was sufficient evidence to support the District Court's judgment.  See State v. Kam, 134 Hawaiʻi 280, 288-89, 339 P.3d 1081, 1089-90 (2014) (citation omitted) (holding that "matches" in various exhibits containing defendant's name, address, date of birth, and last four digits of social security number constituted sufficient evidence of a prior OVUII conviction).

For the reasons discussed above, the Judgment filed on December 30, 2019, in the District Court of the First Circuit, is affirmed.

DATED:  Honolulu, Hawaiʻi, May 9, 2022.


On the briefs:                    /s/ Lisa M. Ginoza
                                  Chief Judge
Samuel P. King, Jr.,
For Defendant-Appellant           /s/ Keith K. Hiraoka
                                  Associate Judge
Loren J. Thomas,
Deputy Prosecuting Attorney,      /s/ Karen T. Nakasone
for Plaintiff-Appellee            Associate Judge