**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000639
20-JUN-2025
07:54 AM
Dkt. 81 SO**

NO. CAAP-22-0000639

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
KHAMTAY K. MOUNSENA, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1DCC-22-0002426)

### SUMMARY DISPOSITION ORDER
(By: Hiraoka, Presiding Judge, Nakasone and Guidry, JJ.)

Defendant-Appellant Khamtay K. Mounsena (**Mounsena**) appeals from the Notice of Entry of Judgment and/or Order (**Judgment**), filed on October 20, 2022 in the District Court of the First Circuit (**district court**).[1]

On March 17, 2022, the State of Hawai'i (**State**) filed a Complaint charging Mounsena with the offense of Assault in the Third Degree in violation of Hawaii Revised Statutes (**HRS**) § 707-712(1)(a) (2014). Following a bench trial, the district

---

[1] The Honorable Michael A. Marr presided.

court found Mounsena guilty of the charged offense, and sentenced Mounsena to one week in jail. This appeal followed.

Mounsena raises two points of error on appeal, contending that: (1) "[t]he district court abused its discretion in sentencing Mounsena to jail"; and (2) "[t]he district court's ultimate Tachibana colloquy was defective."

Upon careful review of the record, briefs, and relevant legal authorities, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Mounsena's points of error as follows:

(1) Mounsena first contends that the district court abused its discretion by sentencing Mounsena to one week in jail on the grounds that: (1) "[Mounsena] was a male who injured a female," and "a message needed to be sent to the [Laotian] community that such conduct will be punished"; (2) "the [district] court erroneously found that . . . despite [the Complaining Witness' (**CW**)] conduct, there was 'absolutely no provocation,'" and "Mounsena . . . saw [the CW's] injuries but did not help her"; and (3) "Mounsena's exercise of his right to trial took three days (i.e., wasted the court's time)."

Pursuant to HRS § 706-606 (2014), a trial court considers the following factors in imposing a criminal sentence:

> (1) The **nature and circumstances of the offense** and the **history and characteristics of the defendant;**

2

    (2)    **The need for the sentence imposed:**

        (a)    To **reflect the seriousness of the offense**, to **promote respect for law**, and to **provide just punishment** for the offense;

        (b)    To **afford adequate deterrence** to criminal conduct;

        (c)    To **protect the public from further crimes of the defendant**; and

        (d)    To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3)    The kinds of sentences available; and

    (4)    The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

(Emphasis added.)

A sentencing court has broad discretion in its consideration of the above factors, and in imposing a sentence. "The weight to be given the factors set forth in HRS § 706-606 in imposing a sentence is a matter generally left to the discretion of the sentencing court, taking into consideration the circumstances of each case." State v. Sandoval, 149 Hawaiʻi 221, 232, 487 P.3d 308, 319 (2021) (cleaned up). We review the district court's sentencing decision for abuse of discretion. See State v. Barnes, 145 Hawaiʻi 213, 217, 450 P.3d 743, 747 (2019) ("In general, the applicable standard of review in sentencing matters is whether the [sentencing] court committed a plain and manifest abuse of discretion in its decision.") (cleaned up).

At the sentencing hearing, the district court engaged in the following exchange with Mounsena:

> THE COURT: . . . Sir, on the one hand, going in your favor, you don't have a record and you're 55.
> **Going against you is the crime of assault against a woman.  And in my view, she didn't do anything to provoke you.  And she's a lot smaller than you.  I guess I mean she's only about 110 pounds.  Maybe not even that.**
> How much do you weigh, sir?
>
> [MOUNSENA]:  180.
>
> THE COURT: That's going to be one reason why you put your hand on her, even with a little bit of force, it's going to result in her maybe falling.
> The worst thing that I have -- that -- rather, **the worst thing that came out of the evidence was the fact that you saw her injuries, but you said she got what she deserved.**  Would you like to say anything regarding that?
>
> [MOUNSENA]: No, nothing.  I just want to say something, apologize for her for the accident.
>
> THE COURT: See, with that -- **with that type of mentality, thinking that you can put your hand on somebody's shoulder, force -- force them to fall, cause severe injury, and then say the person got what they deserved, indicates that you might be a danger to society. You gotta remember this is a small female that's about 110 pounds.**  And you said you're 180?
> The Court doesn't believe that jail would be inappropriate.  The Court is -- has considered the fact that he's never been to jail before.  **The Court doesn't want [Mounsena] to think that he can go around and -- and push people, so to speak, or touch them, in his words, and have them injure themselves and then think that they got what they deserved without a consequence after a three-day trial.**
> **If the Court doesn't impose jail, he's going to think that there's no serious consequence for injuring another person if he thinks -- if they get what he -- they deserve.**
> **The only thing she did to provoke him was to get into an argument with his girlfriend.  That's not a reason to -- to cause injury like that.  If she was a little bit too loud, drinking and swearing, that type of conduct exhibited by [Mounsena] is not reason to assault either.  There's absolutely no provocation.**  He could have reasonably talked to her if he wanted to.  But that's evidently something that did not satisfy him.  He did talk to her a little bit, I believe.  At least that's what he wanted to do.  But he ended up pushing her instead.
> So the Court's going to order jail one week given that he doesn't have a record.  If he had a record, it would be a lot longer than that.  But the Court believes

4

> that jail is appropriate.  It needs to -- **there needs to be a deterrence.  And there has to be a message to the community that you can't go around and push somebody, particularly if a person is a female and a lot smaller than you and you are a male, and then believe that they got what they deserved.**

(Emphasis added.)

The trial transcript reflects that the district court considered, inter alia, the "nature and circumstances" of the offense and Mounsena's "history and characteristics," as well as the needs to "protect the public," promote "respect for law," provide a "just punishment," and ensure "adequate deterrence." The record provides no support for Mounsena's contention that he was sentenced to one week in jail based on his or the CW's gender, or because of his race.  The district court brought up gender solely in the context of emphasizing the heightened risk of harm posed by the 180-pound Mounsena "pushing" the much smaller 110-pound CW.  The district court did not reference Mounsena's race.  The district court identified the need to send "a message to the community"; in doing so, the district court did not specifically identify a need to send that message to the *Laotian* community.  From a plain reading of the transcript, it appears that the district court determined that "pushing" another person — thereby causing injury to that person — is a serious criminal offense, and that jail time was necessary to send a deterrent message to Mounsena and "the community" at large.

The district court explained that it imposed a sentence of one week in jail, in part, because Mounsena had pushed the CW without provocation, and had expressed at trial that the CW "got what she deserved." The district court noted that "[t]he only thing [the CW] did to provoke [Mounsena] was to get into an argument with his girlfriend," and that the CW being "a little bit too loud, drinking and swearing" did not justify Mounsena's violent response. The record reflects that the district court balanced the seriousness of the offense with the mitigating factor that Mounsena has no criminal record. The district court explained to Mounsena that "[i]f he had a record," the sentence imposed "would be a lot longer than" one week.

On this record, we determine that the district court did not abuse its discretion in imposing a sentence of one week in jail, consistent with its consideration of the sentencing factors set forth in HRS § 706-606.

(2) Mounsena next contends that the district court's ultimate Tachibana colloquy was defective because Mounsena's election to testify was not "knowing, voluntary, and intelligent." We review the sufficiency of a Tachibana colloquy under the right/wrong standard, looking at "the totality of the facts and circumstances" of the case. State v. Celestine, 142 Hawaiʻi 165, 169, 171, 415 P.3d 907, 911, 913 (2018).

A defendant in a criminal case has a fundamental right to testify, or not to testify, in their own defense. To protect this right, a trial court is required, inter alia, to engage the defendant in an on-the-record "ultimate colloquy" — i.e., "a verbal exchange between the judge and the defendant in which the judge ascertains the defendant's understanding of the proceedings and of the defendant's rights" to testify or not to testify. Id. at 170, 415 P.3d at 912 (cleaned up). "As part of this inquiry, the trial court elicits responses as to whether the defendant intends to not testify, whether anyone is forcing the defendant not to testify, and whether the decision to not testify is the defendant's." Id. at 170-71, 415 P.3d at 912-13 (citation omitted).

Here, Mounsena elected to testify. The Hawaiʻi Supreme Court has instructed "that trial courts are required to engage in an on-the-record colloquy with a defendant when the defendant chooses to testify to ensure that a waiver of the right not to testify is knowing, intelligent, and voluntary." State v. Torres, 144 Hawaiʻi 282, 294-95, 439 P.3d 234, 246-47 (2019). "The implication of such a requirement merely requires the trial court to give the Tachibana colloquy to a defendant whether or not the defendant elects to testify." Id. at 295, 439 P.3d at 247.

The record reflects that the district court engaged in an extensive colloquy with Mounsena that was interspersed with two recesses:

> THE COURT: . . . Mr. Mounsena, do you understand -- first of all, [defense counsel], **you discussed your -- Mr. -- with Mr. Mounsena his Tachibana rights; correct?**
>
> [DEFENSE COUNSEL]: **Yes, Your Honor.**
>
> THE COURT: Okay.
>
> [MOUNSENA]: Yes, Your Honor.
>
> THE COURT: Sir, I asked you these questions or really similar questions on the hearing on the first day of this trial. I'm going to ask you the same, if not similar, questions now. **Do you understand that you have a right to testify and nobody can tell you you cannot testify?**
>
> [MOUNSENA]: **Yes, Your Honor.**
>
> THE COURT: You understand that includes your own attorney, [defense counsel]?
>
> THE INTERPRETER: I'm sorry. Can you please speak louder?
>
> THE COURT: Yeah. Do you understand that includes your own attorney, [defense counsel]?
>
> [MOUNSENA]: Yes, Your Honor.
>
> THE COURT: So what would happen if you wanted to testify but [defense counsel] told you you could not testify? Would you get to testify or do you have to listen to [defense counsel]?
>
> [MOUNSENA]: Okay. No. Nothing. Nothing.
>
> THE COURT: That wasn't my question. Oh, okay. What we're going to do -- I want the record to be clear that you're not telling him the answer.
>
> [DEFENSE COUNSEL]: Oh, no, no, no. Sorry.
>
> THE COURT: And you just did essentially. And so what we're going to do is we're going to take just a five-minute recess. I'm going to give you time to talk to him about his Tachibana rights again because maybe it was -- you know, second time around the first day of the --
>
> [DEFENSE COUNSEL]: I can talk to him if you want.

THE COURT: Okay. Yeah. We'll take a five-minute recess and then I'll start from the beginning again. Okay? Thank you.

(**A recess was taken.**)

[DEFENSE COUNSEL]: Thank you, Judge.

THE COURT: Thank you.

[DEFENSE COUNSEL]: We're ready for the colloquy.

THE COURT: And [defense counsel], the reason why it's important that the words come from Mr. Mounsena and not you is because there's a Supreme Court case that reversed a judge where the judge didn't -- or counsel answered for the defendant.

[DEFENSE COUNSEL]: Yes, Your Honor. I understand. Thank you.

THE COURT: Yeah. Okay.

[DEFENSE COUNSEL]: Thank you for the time to talk.

THE COURT: Thank you.

So **Mr. Mounsena, I'm going to start over again.** All right? **You understand that you have the right to testify? Nobody can tell you you cannot testify, including your attorney?**

[MOUNSENA]: **Yes, Your Honor.**

THE COURT: Okay. So **what would happen if you wanted to testify but your attorney didn't want you to testify? Would you have to listen to your attorney, or would you get to testify?**

[MOUNSENA]: **I have the right to testify on my own.**

THE COURT: Okay. That wasn't my question. **But would you have to -- to listen to your attorney, or would you get to testify?**

[MOUNSENA]: **Yes. I don't have to listen to my attorney. But then -- yeah. I have to -- I have to testify on my own.**

THE COURT: That's right. Now, **do you understand that if you elect to testify, the prosecutor can ask you questions?**

[MOUNSENA]: Okay.

THE COURT: Okay. Do you understand?

9

[MOUNSENA]: **I understand.**

THE COURT: Okay. **Do you also understand that you have the right not to testify?**

[MOUNSENA]: **I understand. Yes.**

THE COURT: Okay. **Do you understand if you exercise the right not to testify, the Court cannot infer from your decision anything negative whatsoever?**

[MOUNSENA]: **Yes. Yes, Your Honor.**

THE COURT: Okay. Do you understand in both situations, the right to testify and the right not to testify, the burden of proof is on the State to prove beyond a reasonable doubt that you're guilty?

[MOUNSENA]: Can you please repeat, Your Honor?

THE COURT: Okay. Now that you know what your right to testify and your right not to testify is, do you understand in both situations the burden of proof --

[MOUNSENA]: So what's the difference between the right and with no right? What's the difference between the two?

THE COURT: I just explained it to you. Would you like to speak to your attorney about it again?

[MOUNSENA]: (Indiscernible).

THE COURT: We'll take a five-minute recess again. [Defense counsel], please talk to your client.

(**A recess was taken.**)

THE COURT: Thank you, [defense counsel].

[DEFENSE COUNSEL]: Thank you, Your Honor. Yes, we're ready.

THE COURT: Okay. So Mr. Mounsena, **I'm going to ask you the questions again. We'll start all over.** All right? Okay. **Do you understand that you have a right to testify, nobody can tell you you cannot testify, including your own attorney?**

[MOUNSENA]: **Yes. Understood, Your Honor.**

THE COURT: Okay. So if you wanted to testify, [defense counsel] told you you cannot testify, will you get to testify or would you have to listen to [defense counsel]?

10

[MOUNSENA]: Yes, Your Honor. Understood.

THE COURT: Yeah. But that wasn't my question, sir. My question was -- please listen carefully. If you wanted to testify and [defense counsel] told you you could not testify, would you get to testify or would you have to listen to [defense counsel]?

[MOUNSENA]: Okay. I have to listen to her because she's my witness, but I want to testify on my own as well.

THE COURT: No. You don't have to listen to [defense counsel]. That's vague and ambiguous.

**[DEFENSE COUNSEL]: He got confused with [a witness] and [defense counsel]. I think that's why he got confused.**

THE COURT: That's fine. Okay. I --

[DEFENSE COUNSEL]: [A witness] is the witness that's why. So I think he got confused with the two names.

THE COURT: Okay. I'll ask you again. Did -- **if you wanted to testify, but [defense counsel] told you you couldn't testify, would you get to testify -- would you get to testify or would you have to listen to [defense counsel]?** [Defense counsel] is your attorney.

**THE INTERPRETER: Oh, [defense counsel]? Okay. [Defense counsel] and [a witness]. The name is so close to each other.**

THE COURT: Yeah.

[MOUNSENA]: Okay. **I understand that I have the right to testify on my own --**

THE COURT: Okay.

[MOUNSENA]: -- **without listening to her.**

THE COURT: That's right. Now, **do you understand that if you elect to testify, the State can ask you questions?**

[MOUNSENA]: Okay. **Yes, Your Honor.** Okay.

THE COURT: You also understand that you have the right not to testify?

[MOUNSENA]: Okay. I have the right to testify. No. I want to testify.

THE COURT: Okay. But --

[MOUNSENA]: Who told me that I don't have the right and stop me from testifying?

THE COURT:  I'm sorry.  What did you say?

[MOUNSENA]:  Okay.  I want to testify.

THE COURT:  Okay.  That's fine.  But I -- I want you to -- we're not done with my questioning.  Okay?  Please interpret.

THE INTERPRETER:  Okay.

[MOUNSENA]:  Yes, Your Honor.  Okay.

THE COURT:  Okay.  Do you understand that you have the right not to testify?

[MOUNSENA]:  I don't understand your question.

THE COURT:  Do you understand -- do you understand that -- I'll say it again.  Maybe you didn't hear me.  **Do you understand that you have the right not to testify?  In other words, you don't have to say anything during this trial.**

[MOUNSENA]:  **Why do you see [sic] that I have the right?**

**[DEFENSE COUNSEL]:  Can you also interpret the next thing that he said?**

**THE INTERPRETER:  I'm so sorry.  Can you please repeat that, Your Honor?  The last part?**

THE COURT:  **In other words, you have -- you have the right not to testify.  And that's kind of like saying you don't have to say anything.  You understand that?**

[MOUNSENA]:  **Yes.  Understood, sir.**

THE COURT:  Okay.  Now, **do you understand that if you elect not to testify, the Court cannot hold your decision against you in any way whatsoever?**

[MOUNSENA]:  **Understood.**

THE COURT:  Okay.  **Do you understand that in both situations -- the right to testify and the right not to testify -- you have -- the burden of proof is on the State to prove beyond a reasonable doubt that you're guilty?**

[MOUNSENA]:  Yes.  **Yes, Your Honor.**

THE COURT:  Okay.  Now, **have you made a decision as to what you want to do to exercise your right to testify or your right not to testify?**

[MOUNSENA]:  **I want to testify.**

> THE COURT: Okay. Please take the stand and be sworn in.

(Emphasis added.)

As reflected in the above colloquy, the district court ascertained that Mounsena understood that he had the right to testify or *not* testify, that he had this right regardless of his counsel's advice, that his decision could not be held against him in any way, that the prosecutor could cross-examine him if he chose to testify, and that, irrespective of his decision to testify or not testify, the State had the burden of proving his guilt beyond a reasonable doubt.

Mounsena contends that his language barrier, which required the assistance of an interpreter, constituted a "salient fact" that affected Mounsena's "knowing, intelligent, and voluntary" waiver of his right not to testify.

> The presence of a "salient fact" underscores the importance of the court's colloquy as a procedural safeguard that protects a defendant's right to testify or to not testify. "Salient facts," such as mental illness or language barriers, require that a court effectively engage the defendant in a dialogue that will effectuate the rationale behind the colloquy and the on-the-record waiver requirements as set forth in Tachibana.

State v. Han, 130 Hawaiʻi 83, 92, 306 P.3d 128, 137 (2013) (cleaned up). The record reflects that the district court made considerable efforts to "effectively engage" Mounsena, such that language was not a barrier to Mounsena's understanding of his

rights, and so as to "effectuate the rationale behind the colloquy and the on-the-record waiver requirements."

On this record, we conclude that the district court conducted a proper <u>Tachibana</u> colloquy, and that the district court was not wrong in finding that Mounsena knowingly, intelligently, and voluntarily exercised his right to testify and waived his right not to testify.

For the foregoing reasons, we affirm the Judgment.

DATED: Honolulu, Hawaiʻi, June 20, 2025.

On the briefs:

Phyllis J. Hironaka,
Deputy Public Defender,
for Defendant-Appellant.

Loren J. Thomas,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge