**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000861
29-MAY-2024
11:07 AM
Dkt. 185 AMSDO**

NO. CAAP-19-0000861

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
JOEL H. WHITE, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CASE NO. 3PC14100137K)

AMENDED[1] SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Wadsworth and Nakasone, JJ.)

Defendant-Appellant Joel H. White (**White**) appeals from the November 20, 2019 Judgment of Conviction and Sentence (**Judgment**), entered by the Circuit Court of the Third Circuit (**Circuit Court**).[2] White was charged via an April 21, 2014 Complaint of second-degree attempted murder of Jeremy Nicholas (**Nicholas**) in violation of Hawaii Revised Statutes (**HRS**) §§ 705-500(1)(b) (2014) and 707-701.5(1) (2014). Following a

---

[1] The May 29, 2024 Summary Disposition Order (docket 183) was missing the "Not for Publication" header, which is now added.

[2] The Honorable Henry T. Nakamoto presided.

second jury trial in 2019,[3] White was convicted of the included offense of first-degree assault in violation of HRS § 707-710 (2014),[4] and sentenced to a ten-year term of imprisonment.

On appeal, White raises four points of error (**POEs**), contending that: (1) White's "conviction must be set aside" because the prosecution via Complaint violated HRS § 801-1 (2014)[5] under State v. Obrero, 151 Hawai'i 472, 478, 482, 517 P.3d 755, 761, 765 (2022);[6] (2) White's conviction was the "product of prosecutorial misconduct" because of a discovery violation under Hawai'i Rules of Penal Procedure (**HRPP**) Rule 16(b)(1)(i), a detective witness's improper comment on White's right to remain silent, and misconduct during the State's closing argument that "violated White's right to due process"; (3) the Circuit Court conducted "defective" Lewis and Tachibana colloquies; and (4) there was "insufficient evidence" to support White's conviction.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we affirm.

---

[3] Following the first jury trial in 2015, in which White was found guilty of second-degree attempted murder, the Circuit Court granted White a new trial, which was later affirmed on appeal in State v. White, No. CAAP-15-0000491, 2018 WL 1083017, at *7 (Haw. App. Feb. 28, 2018) (mem.).

[4] HRS § 707-710, entitled "Assault in the first degree," states in pertinent part: "(1) A person commits the offense of assault in the first degree if the person intentionally or knowingly causes serious bodily injury to another person." HRS § 707-700 (2014), entitled "Definitions of terms in this chapter," defines "serious bodily injury" as "bodily injury which creates a substantial risk of death . . . ."

[5] HRS § 801-1, entitled "Indictment or information," states: "No person shall be subject to be tried and sentenced to be punished in any court, for an alleged offense, unless upon indictment or information, except for offenses within the jurisdiction of a district court or in summary proceedings for contempt."

[6] This POE was raised in a Supplemental Brief, which White was permitted to file in light of Obrero.

**POE 1:  White's <u>Obrero</u> challenge lacks merit.**

White argues that his conviction should be dismissed under <u>Obrero</u> because the charges against him were brought by complaint, rather than by grand jury indictment or information, in violation of HRS § 801-1.

In <u>Obrero</u>, the supreme court held that where a defendant challenges a complaint and the State's failure to comply with HRS § 801-1 for the first time on appeal, the supreme court would "presume the validity of the complaint" and would not reverse a conviction "absent a showing that the complaint prejudiced [the defendant] or could not be construed to charge a crime."  <u>Id.</u> at 478 n.11, 517 P.3d at 761 n.11 (citation omitted).

Here, White did not challenge the Complaint based on an HRS § 801-1 violation below, and does not argue on appeal how the Complaint "prejudiced him or could not be construed to charge a crime."  <u>Id.</u>  Thus, we "presume the validity" of the Complaint against White, and his <u>Obrero</u> challenge is without merit.  <u>Id.</u>

**POE 2:  White's contention that his conviction is the product of prosecutorial misconduct lacks merit.**

White's first argument regarding his prosecutorial misconduct claim is that there was an HRPP Rule 16 discovery violation.  White argues that Hawaiʻi County Police Department Detective Levon Stevens's (**Detective Stevens**) testimony during trial -- of observing White "stripped all the way down" after the police "recovered his clothes" with "no markings on his body" -- was "evidence of an illegal search that was not previously disclosed" to the defense.  White's trial counsel argued that:

> to my knowledge there was no indication in any of the discovery brought up by the State that Mr. White's person was visually searched. That his naked body was visually

3

> searched by the police for any evidence of any bruising or lacerations or abrasions or any sort of injuries relating to this.

Because this information "was not previously disclosed to [the] [d]efense" in discovery, White moved for a "mistrial on that basis." In response to White's claim that this "search" of White was not undisclosed, the State argued below that:

> Regarding whether or not this was provided in discovery I'd have to look at the actual pages of discovery, but I know that it was testified to at both a preliminary hearing and then the prior set of hearings that we have discussed at length.
>
> That they had opportunity to view him and that there was [sic] no markings upon him so this is not a surprise in any way to [sic] Defense.

The Circuit Court ruled as follows: "Okay. So the Court will deny the oral motion for a mistrial. I'll note your objection and, [Deputy Prosecuting Attorney], you can proceed."

On appeal, White refers to and attaches to his Opening Brief Hawaiʻi County Police Department Policy and Procedures number 6 pertaining to "Strip Searches" (**Strip Search Policy**). White relies on the Strip Search Policy to argue that the detective "must have complied" with the policy, and "in doing so, prepared a report documenting his [s]trip [s]earch of White"; and that HRPP Rule 16 was violated because no such report was disclosed. The Strip Search Policy is not part of the record below, and the attachment of, and reference to it violates Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 10(a) and 28(b)(3). See Alford v. City & Cnty. of Honolulu, 109 Hawaiʻi 14, 25 n.18, 122 P.3d 809, 820 n.18 (2005) ("References and appendices not part of the record on appeal cannot be considered. This is a violation of HRAP 10 and such a practice cannot be tolerated." (cleaned up)); Bettencourt v. Bettencourt, 80 Hawaiʻi 225, 229 n.2, 909 P.2d 553, 557 n.2 (1995) (holding

that matters outside the record on appeal may neither be appended nor referred to in an appellate brief (citation omitted)).  White's new argument based on the Strip Search Policy was not preserved below, and is waived.  See State v. Hoglund, 71 Haw. 147, 150, 785 P.2d 1311, 1313 (1990) ("Generally, the failure to properly raise an issue at the trial level precludes a party from raising that issue on appeal." (citation omitted)).  Finally, White's assertion on appeal that the State "clearly violated" the HRPP is not supported by any ruling or findings by the Circuit Court regarding whether a violation of HRPP Rule 16 occurred or not.  On this record, the Circuit Court did not abuse its discretion in denying White's motion for mistrial.  See State v. Pasene, 144 Hawaiʻi 339, 365, 439 P.3d 864, 890 (2019) ("The denial of a motion for mistrial or new trial is within the sound discretion of the trial court and will not be upset absent a clear abuse of discretion." (cleaned up)).

White's second argument regarding his prosecutorial misconduct claim is that while Detective Stevens was being questioned by defense counsel, the detective gave a response that constituted an improper comment on White's right to remain silent.  The Opening Brief contains only a one-sentence argument, as follows:  "Clearly, the State's witness commenting on [White] asserting his right to remain silent violates fundamental principles of fairness, as well as [White]'s fundamental constitutional right to due process."  No other argument is presented.  This claim of error is waived.  See HRAP Rule 28(b)(7) ("Points not argued may be deemed waived."); Ito v. Invs. Equity Life Holding Co., 135 Hawaiʻi 49, 74, 346 P.3d 118, 143 (2015) ("Where an appellant makes general assertions of a due process violation, without further

elaboration or citation to authority, the court cannot reach a reasoned conclusion, and the due process argument is deemed waived." (citation omitted)).

White's final argument regarding his prosecutorial misconduct claim is that such misconduct occurred "at least eight times" during rebuttal argument, violating White's right to a fair trial. While the Opening Brief sets forth all the claimed eight instances of prosecutorial misconduct, it only advances a one-sentence argument for all eight instances of alleged misconduct, as follows: "Although the [c]ircuit [c]ourt gave curative instructions, eight times, the sheer magnitude of the prosecutions [sic] misconduct warrants the setting aside of the judgment in this matter." White presents no other argument applying the relevant caselaw as to why each statement constituted prosecutorial misconduct, why the curative instruction the Circuit Court gave each time was inadequate, and why these instances of misconduct were not harmless beyond a reasonable doubt. This claim of error is waived. See HRAP Rule 28(b)(7); Haw. Ventures, LLC v. Otaka, Inc., 114 Hawai'i 438, 480, 164 P.3d 696, 738 (2007) (finding that the appellants failed to demonstrate error because they "do not point to anything in the record or provide any analysis that would guide this court in determining the validity of their contention").

**POE 3: The Circuit Court's <u>Tachibana</u> colloquy was defective, but the error was harmless beyond a reasonable doubt.**

White argues that the Circuit Court's ultimate Tachibana colloquy was deficient, where the Circuit Court "never inquired as to whether anyone was forcing, threatening or pressuring White into waiving his constitutional right to remain silent"; and thus, the Circuit Court did not "ensure that his

waiver of his right to remain silent was made in a knowing, intelligent and voluntary manner."

"The validity of a defendant's waiver of constitutional rights in a criminal case is a question of law under the state and federal constitutions." State v. Torres, 144 Hawaiʻi 282, 288, 439 P.3d 234, 240 (2019) (citations omitted). Questions of constitutional law are reviewed under the right/wrong standard. Id. (citation omitted).

The Circuit Court conducted a Tachibana colloquy of White as follows:

> THE COURT: As I discussed with you before we started the trial you have a constitutional right to testify in your own defense.
>
> Although you should consult with your lawyer regarding the decision to testify or not testify it is your decision, and no one can prevent you from testifying should you choose it [sic] do so. If you decide to testify the State or prosecutor will be allowed to cross-examine you. You [sic] understand that?
>
> [WHITE]: Yes.
>
> THE COURT: And you also understand that you have -- another constitutional right is [sic] to not testify and remain silent. If you choose not to testify the jury will be instructed that it cannot hold your silence against you in any way in deciding your case. You understand that?
>
> [WHITE]: Yes.
>
> THE COURT: So you understand you have at least two different rights?
>
> [WHITE]: Yes.
>
> THE COURT: And what are those rights?
>
> [WHITE]: To testify or not to testify.
>
> THE COURT: And you decided what you're gonna [sic] do?
>
> . . . .
>
> [WHITE]: Yes.
>
> THE COURT: And what are you gonna [sic] do?

[WHITE]: Testify.

THE COURT: Okay. So the Court finds that you made a knowing, intelligent, and voluntary decision to waive your right to remain silent and to testify. And so the Court does find you knowingly [sic] voluntarily and intelligently waived your right to not testify and exercising your constitutional right to testify in this case.

You have any questions about those rights before we proceed?

[WHITE]: No, Your Honor.

THE COURT: And you were able to talk to your attorney about those rights?

[WHITE]: Yes.

THE COURT: You feel you fully understand those rights?

[WHITE]: Yes.

(Emphases added.)

There are two components of a Tachibana colloquy: (1) "informing the defendant of fundamental principles pertaining to the right to testify and the right not to testify"; and (2) "engaging in a true 'colloquy' with the defendant[,]" which consists of a "verbal exchange between the judge and the defendant in which the judge ascertains the defendant's understanding of the proceedings and of the defendant's rights." State v. Celestine, 142 Hawai'i 165, 170, 415 P.3d 907, 912 (2018) (cleaned up). To satisfy the second component of the Tachibana colloquy, it is "suggested that the trial court engage in a verbal exchange with the defendant at least twice": (1) "after the court informs the defendant of the right to testify and of the right not to testify and the protections associated with these rights"; and (2) "after the court indicates to the defendant its understanding that the defendant does not intend to testify[,]" which includes "responses as to whether the

defendant intends to not testify, whether anyone is forcing the defendant not to testify, and whether the decision to not testify is the defendant's." Id. at 170-71, 415 P.3d at 912-13 (citations omitted); see Torres, 144 Hawai'i at 294-95, 439 P.3d at 246-47 (applying the same protections to the right not to testify).

Here, the Circuit Court did not satisfy the second component of the Tachibana colloquy, where it failed to elicit responses from White as to whether he intended to testify, whether anyone was forcing him to testify, and whether the decision to testify was his. See Celestine, 142 Hawai'i at 170-71, 415 P.3d at 912-13. Rather, after White informed the court that he was going to testify, the Circuit Court stated that it found White "knowingly[,] voluntarily[,] and intelligently waived [his] right to not testify and exercise[d] [his] constitutional right to testify." In addition, the Circuit Court then asked White if he had "any questions about those rights," without specifying which right the Circuit Court was relying to. See State v. Pomroy, 132 Hawai'i 85, 93, 319 P.3d 1093, 1101 (2014) (holding that the trial court erred when it asked the defendant if he "understood that" without clarifying to which right "that" referenced). Thus, the Tachibana colloquy was defective, and the record does not demonstrate a knowingly, intelligently, and voluntarily waiver of the right to not testify.[7] See Torres, 144 Hawai'i at 288, 39 P.3d at 240.

_____

[7] While White also challenges the Circuit Court's pre-trial Lewis advisement, we need not address that issue because we hold that the failure to properly conduct the ultimate Tachibana colloquy was harmless error; in these circumstances, any defect in the pre-trial advisement could not have actually prejudiced White. Cf. Pomroy, 132 Hawai'i at 92, 319 P.3d at 1100 ("[W]e need not determine whether the absence of the prior-to-trial Tachibana colloquy actually prejudiced Pomroy, because we hold that the ultimate Tachibana colloquy was defective, and, therefore, the record does not reflect

"When the violation of a constitutional right has been established, the conviction must be vacated unless the State can prove that the violation was harmless beyond a reasonable doubt."  Torres, 144 Hawaiʻi at 290-92, 439 P.3d at 242-44 (cleaned up) (holding that even had defendant been advised of his right not to testify and chose to exercise that right, "the sum effect would be that [the defendant]'s trial testimony would not have been elicited[,]" and that the evidence presented by the State was nonetheless overwhelming, where the complaining witness's testimony was corroborated by video evidence).

> Under the harmless beyond a reasonable doubt standard, this court must determine whether there is a reasonable possibility that error might have contributed to the conviction. If such reasonable possibility exists, then the judgment of conviction on which it may have been based must be set aside. When assessing whether the error was harmless, a crucial if not determinative consideration is the strength of the prosecution's case on the defendant's guilt.

Id. at 291, 439 P.3d at 243 (emphasis added) (cleaned up).

Here, even if White had been properly advised of his right not to testify and chosen to exercise that right, "the sum effect would be that [White]'s trial testimony would not have been elicited."  Id.  If White's testimony is thus not considered, we conclude that the prosecution's evidence with respect to first-degree assault is nevertheless overwhelming. Nicholas testified White stabbed him in the neck, then stabbed him a "couple times" in the back of his neck and shoulder as Nicholas fled; Nicholas ran to a bedroom occupied by his landlord Ann Bussey (**Bussey**), then through a sliding door, and

---

that Pomroy intelligently, knowingly and voluntarily waived the right to testify." (citation omitted)); State v. Chong Hung Han, 130 Hawaiʻi 83, 89, 306 P.3d 128, 134 (2013) ("In holding that the failure to properly conduct the Tachibana colloquy was harmful error, infra, the issue of whether Petitioner could demonstrate 'actual prejudice' with respect to the pre-trial colloquy need not be addressed here.").

continued to run down the street for help.  Bussey testified that Nicholas and White "burst into" her bedroom door; White "stab[ed] [Nicholas] repeatedly" in the "upper back" while Nicholas's back was facing White; Nicholas ran out the door still pursued by White; and Bussey tried to stop White "so [Nicholas] could get away."  A door-to-door salesman who was in the neighborhood testified he observed Nicholas running towards him with a "huge gash" "on his neck."  A neighbor testified to seeing a "large laceration" on Nicholas's neck, and "wounds" on Nicholas's back.  The general trauma surgeon testified to treating Nicholas for a "large incision" on his neck and wounds on his upper back, all of which were "life-threatening"; observing "puncture wounds" in Nicholas's upper shoulder, neck, and shoulder-blade, a "larger wound" between the "neck and the back," "two lacerations" on Nicholas's back; and opining that if Nicholas did not obtain treatment that day, Nicholas would not be alive.  In light of the strength of the State's evidence described above, we conclude the Circuit Court's defective colloquy was harmless beyond a reasonable doubt.  See Torres, 144 Hawai‘i at 290-91, 439 P.3d at 242-43.

**POE 4: There was sufficient evidence to support White's conviction.**

For the reasons set forth supra in POE 3, there was sufficient evidence, viewed in the light most favorable to the State, to support White's conviction for first-degree assault. See State v. Kalaola, 124 Hawai‘i 43, 49, 237 P.3d 1109, 1115 (2010) (explaining that the test on appeal for sufficiency of evidence "is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact" (citation omitted)).

NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

For the foregoing reasons, we affirm the November 20, 2019 Judgment of Conviction and Sentence, entered by the Circuit Court of the Third Circuit.

DATED: Honolulu, Hawaiʻi, May 29, 2024.

On the briefs:

Walter J. Rodby,
for Defendant-Appellant.

Kate Perazich,
Stephen L. Frye,
Deputies Prosecuting Attorney,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge